**LARA SHALOV MEHRABAN**
**ACTING REGIONAL DIRECTOR**
Sheldon L. Pollock
Steven G. Rawlings
Lee A. Greenwood
Philip A. Fortino
Megan R. Genet
Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
212-336-1060 (Greenwood)
GreenwoodL@sec.gov

U.S. ... ...
... ... ...

2022 J.. 24  A.. 10: 55

... ... ... CLERK
... ... ...

22-MC-113-S

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

-against-

**STRAIGHTPATH VENTURE PARTNERS LLC, STRAIGHTPATH MANAGEMENT LLC, BRIAN K. MARTINSEN, MICHAEL A. CASTILLERO, FRANCINE A. LANAIA, and ERIC D. LACHOW,**

Defendants.

---

**COMPLAINT**

**22 Civ. 3897**

**JURY TRIAL DEMANDED**

---

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendants StraightPath Venture Partners LLC (the "SP Fund Manager"), StraightPath Management LLC (the "SP Adviser"), Brian K. Martinsen ("Martinsen"), Michael A. Castillero ("Castillero"), Francine A. Lanaia ("Lanaia"), and Eric D. Lachow ("Lachow") (collectively, "Defendants"), alleges as follows:

**SUMMARY**

1.     The Commission brings this emergency action to halt an ongoing fraud by Defendants in connection with their illegal sales of unregistered securities in investment vehicles that

purportedly provided access to highly-coveted shares of private companies that may hold an initial
public offering ("IPO"). But, these investment vehicles were a fraud—they did not own all the
private company stock Defendants said they did, the investors paid exorbitant, undisclosed fees that
allowed Defendants to pocket tens of millions of dollars, and Defendants improperly commingled
investor funds and made Ponzi-like payments.

2.      From November 2017 through February 2022, Defendants raised at least $410
million from more than 2,200 investors located across the country and around the world, including
in this District. In exchange for their investments, investors received securities—interests in a
subdivision ("Series") of one of nine private investment funds (an "SP Fund").

3.      Through both written materials and their vast network of sales agents, Defendants
represented to investors that their investments would be directed to a specific Series that
purportedly owned a specific number of shares of a specific private company that had the potential
to undertake an IPO ("Pre-IPO Shares"). Defendants then told investors that their investment
corresponded to a specific number of Pre-IPO Shares held by that Series. In essence, Defendants
pitched the investment as a way for retail investors to own potentially lucrative, difficult-to-find Pre-
IPO Shares that could not yet be purchased on a public stock exchange.

4.      Contrary to these representations, however, Defendants often were unable to obtain
the number of Pre-IPO Shares they either claimed to already have or needed to back the interests
they sold to investors. And, rather than return the money investors paid them, Defendants kept it
for themselves and continued to solicit new investors.

5.      Defendants also repeatedly told investors that each Series would be kept separate
from all other Series, thus (in theory) protecting their investments from losses from another Series
backed by other Pre-IPO Shares that were less profitable. But instead, Defendants freely
commingled investor funds, frequently transferring monies invested in one SP Fund to other SP

Funds or to the SP Fund Manager in order to make purchases of Pre-IPO Shares or Ponzi-like payments back to earlier investors who wanted their money back.

6.      All the while, Defendants profited handsomely from their fraudulent scheme. Even as they told investors they were charging no upfront fees (or had waived the fees they could have charged), Martinsen, Castillero, Lanaia, and Lachow paid themselves more than $75 million and their sales agents nearly $48 million.

7.      Defendants also concealed from investors the continuing roles of Castillero and Lanaia, two of the three founders, who were effectively barred from the brokerage industry but who operated behind the scenes to run the SP Funds and further the fraud. And, when the Commission staff sought copies of the emails of sales agents during its investigation, Castillero and Martinsen intentionally deleted them to avoid implicating themselves.

8.      In addition to the fraud the perpetrated on investors, Defendants violated the securities and broker-dealer registration provisions of the securities laws. None of the interests in the SP Funds were registered with the Commission and no exemption from registration applied to these securities offerings because, among other reasons, Castillero—a founder of the SP Fund Manager and the head of its salesforce—was barred from the brokerage industry. And, Defendants ran an unregistered broker-dealer through their use of sales agents (including Lachow) who were not licensed brokers and to whom they paid commissions.

9.      Emergency relief is necessary to protect investors in the SP Funds, which currently hold substantial cash and securities with an estimated value of more than $200 million. In particular, an asset freeze and receiver are necessary to prevent the further dissipation of assets and to ensure that an independent fiduciary takes over the management of the SP Funds, the SP Fund Manager, and the SP Adviser. Only a court-appointed receiver will be able to unwind Defendants'

commingling, identify the full extent of Defendants' fraud, and marshal investor assets in order to propose an equitable distribution plan.

## VIOLATIONS

10.     By virtue of the foregoing conduct and as alleged further herein, Defendants have violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), 206(2), 206(3), 206(4), and 207 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2), (3), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

11.     Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

12.     The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)]; Exchange Act Section 21(d) [15 U.S.C. § 78u(d)]; and Advisers Act Sections 209(d) and 209(e) [15 U.S.C. §§ 80b-9(d) and 80b-9(e)].

13.     The Commission seeks a final judgment:  (a) permanently enjoining Defendants from violating the federal securities laws and rules this Complaint alleges they have violated; (b) ordering Defendants to disgorge the ill-gotten gains they received as a result of the violations alleged here and to pay prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5), and 78u(d)(7)]; (c) ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section

21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C. § 80b-9(e)]; and

(d) ordering any other and further relief the Court may deem just and proper.

14.    To maintain the status quo and preserve assets sufficient for Defendants to pay

disgorgement, prejudgment interest, and civil penalties in accordance with any final judgment of this

Court, the Commission further seeks emergency relief during the pendency of this action including:

(a) temporarily and preliminarily enjoining Defendants from violating the federal securities laws and

rules this Complaint alleges they have violated; (b) freezing the assets of the SP Fund Manager, the

SP Adviser, Martinsen, Castillero, and Lanaia; (c) appointing a receiver over the SP Funds, the SP

Fund Manager, the SP Adviser, and the frozen personal assets of Martinsen, Castillero, and Lanaia;

(d) enjoining the filing of new bankruptcy, foreclosure, receivership or other actions against the SP

Funds, the SP Fund Manager, and the SP Adviser; (e) requiring the SP Fund Manager, the SP

Adviser, Martinsen, Castillero, and Lanaia to provide a sworn accounting; (f) granting expedited

discovery; and (g) preventing Defendants from destroying, altering, or concealing documents or

other evidence or from directing others to do so.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to Securities Act Section 22(a)

[15 U.S.C. § 77v(a)]; Exchange Act Section 27 [15 U.S.C. § 78aa]; and Advisers Act Section 214(a)

[15 U.S.C. § 80b-14(a)].

16.    Defendants, directly and indirectly, have made use of the means or instrumentalities

of interstate commerce or of the mails in connection with the transactions, acts, practices, and

courses of business alleged herein.

17.    Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)],

Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act Section 214 [15 U.S.C. § 80b-14].

From 2017 until 2021, the primary office for the SP Fund Manager and the SP Adviser was in lower

Manhattan, which Castillero and, at various times, Martinsen, Lanaia, and Lachow, used to conduct

the business of these entities.  Additionally, certain acts, practices, transactions, and courses of

business alleged in this Complaint occurred within this District, including calls and emails to

prospective investors in the SP Funds as well as sales of Series interests in the SP Funds to at least

94 investors located in Manhattan and elsewhere in this District.

**DEFENDANTS**

18.     The **SP Fund Manager** is a Delaware limited liability company incorporated on May

11, 2017, which served as the owner and manager of each of the SP Funds.  From 2017 until mid-

2021, the SP Fund Manager's office was in Manhattan; in mid-2021, it moved its office to Jupiter,

Florida.  The SP Fund Manager has never been registered with the Commission as a broker-dealer.

19.     The **SP Adviser** is an investment adviser incorporated in Delaware as a limited

liability company on May 11, 2017, which served as the investment adviser to each of the SP Funds

and as the managing member of the SP Fund Manager.  Like the SP Fund Manager, the SP Adviser's

office was in Manhattan until mid-2021, at which time it moved its office to Jupiter, Florida.  The SP

Adviser has never been registered with the Commission as a broker-dealer.

20.     **Castillero**, age 44, resides in Palm City, Florida.  Castillero is one of the three

founders and beneficial owners of the "StraightPath" suite of entities and funds.  From their

inception in 2017 until early February 2019, on paper, Castillero was the majority beneficial owner of

the SP Adviser and the SP Fund Manager.  On February 6, 2019, Castillero was permanently barred

from associating with any member of the Financial Industry Regulatory Authority ("FINRA") for

refusing to appear for on-the-record testimony in December 2018 in connection with a FINRA

investigation into allegations that, among other things, Castillero engaged in unauthorized trading in

a customer's account when he had been working at a broker-dealer.  Between 2002 and 2017,

Castillero was a registered broker at four different broker-dealers and held Series 7, 24, 63, and 65

securities licenses. Castillero has been the subject of at least 12 customer complaints from his time in the securities industry, all of which alleged fraud or unsuitable investment recommendations.

21.     **Martinsen**, age 45, resides in Saint James, New York. Another one of the three founders and beneficial owners of StraightPath, Martinsen became the purported majority owner of both the SP Fund Manager and the SP Adviser in early February 2019, when Castillero purportedly transferred his interests in those companies to Martinsen. Martinsen is not currently registered with the Commission as a broker. From 1996 until April 2020, Martinsen was a registered broker at 13 different broker-dealers and held Series 7, 24, 63, and 65 securities licenses. Martinsen has been the subject of at least seven customer complaints from his time in the securities industry, which alleged various types of fraud or unsuitable investments.

22.     **Lanaia**, age 57, resides in Fort Salonga, New York. Lanaia is the third founder and beneficial owner of the StraightPath entities, although she has persistently described herself as a mere "consultant." Lanaia has filed two voluntary Chapter 13 bankruptcy petitions; the first was filed on September 8, 2017, and dismissed on March 26, 2018, while the second was filed on May 31, 2018, and dismissed on October 3, 2019. Lanaia was suspended from association with any FINRA member between January 16, 2018, and April 16, 2018, for failing to properly disclose three outstanding civil judgments against her totaling more than $286,000 on her Form U4; on October 29, 2018, that suspension became a permanent bar. Previously, between 1989 and 2017, Lanaia was a registered broker at six different broker-dealers and held Series 7, 24, and 63 securities licenses. Lanaia has been the subject of at least five customer complaints from her time in the securities industry, which alleged fraud or failure to supervise other brokers.

23.     **Lachow**, age 47, resides in Parkland, Florida. From inception until in or around September 2021, Lachow served as the nominal manager of the SP Fund Manager, and, in that capacity, signed documents and sent emails at the direction of the three founders. After Castillero

"resigned" in February 2019, Lachow became the managing member of the SP Adviser and 1 percent owner of both the SP Adviser and the SP Fund Manager. Lachow has not been registered with the Commission as a broker since 2013. At various points in time between 1997 until 2013, Lachow was a registered broker with nine different broker-dealers and held Series 7, 9, 10, 24, 53, 63, and 65 securities licenses.

## FACTS

### I.   STRAIGHTPATH'S SECURITIES OFFERINGS

24.     Castillero, Martinsen, and Lanaia are veterans of the securities industry. They met while working together as licensed brokers at Commission-registered broker-dealers. Martinsen and Lanaia worked together beginning in 2006, while Castillero overlapped with them at various points beginning in 2012.

25.     In May 2017, Castillero, Martinsen, and Lanaia founded StraightPath, with an initial advance of $21,000 from Lanaia.

26.     In theory, StraightPath's business model was to acquire Pre-IPO Shares and then sell to investors an interest in an SP Fund Series that owned those Pre-IPO Shares ("Interests").

27.     Pre-IPO Shares generally are held by early stage investors and company employees and their family members and are not widely available to the investing public.

28.     Pre-IPO Shares are attractive to investors due to the potential for high returns in the event the company does have an IPO and there is high demand for its shares, allowing the shares to be sold above their pre-IPO price.

29.     Together, Castillero, Martinsen, and Lanaia established (a) the SP Adviser, which would be the investment adviser to the SP Funds, (b) the SP Fund Manager, which would acquire the Pre-IPO Shares, allocate them by Series, and then sell Series Interests to investors, and (c) over time, nine SP Funds, each of which was organized as a Delaware series limited liability company.

30.    Between November 2017 and February 2022, the SP Fund Manager sold Series Interests to more than 2,200 investors located in 49 states, Washington, D.C., and Puerto Rico.

31.    At least 94 of these investors are located in Manhattan and in this District.

32.    The SP Fund Manager also sold Series Interests to investors located in at least 13 other countries.

33.    From November 2017 through February 2022, Defendants raised at least $410 million from investors for the SP Funds.

34.    Prospective investors in each of the SP Funds were provided with similar offering documents containing substantially similar language—a private placement memorandum ("PPM"), an operating agreement for the relevant SP Fund contained in the PPM, a subscription agreement, a purchaser questionnaire, and an additional letter and "pitchbook" that provided more information about the pre-IPO company in which investors were led to believe they were investing.

35.    Lanaia drafted the PPMs.

36.    Lachow is named in each of the PPMs as part of the management of the SP Fund Manager.  The PPMs tout Lachow's background and experience in the securities industry, including an "active Investment Advisor License (Series 65)," and provide his contact information for investors who may have questions.

37.    Beginning with SP Fund 3, the PPMs also listed Martinsen as the "director" of both the SP Fund Manager and the SP Adviser, and similarly tout his background and experience in the securities industry.

38.    None of the PPMs refer to either Castillero or Lanaia at all.

39.    The PPMs disclosed to investors that the SP Adviser "will be responsible for investment of the [SP] Fund's assets," which meant that it will "(i) originate, analyze, and recommend investment opportunities to the [SP] Fund that are consistent with the purpose and

investment focus of the [SP] Fund, (ii) structure investments, (iii) identify funding sources for Portfolio Companies, (iv) supervise the preparation and due diligence review of documentation relating to the acquisition, financing, and disposition of investments, (v) monitor investments, and (vi) provide such other services related thereto as the [SP Fund] Manager may reasonably request."

40.     With respect to the SP Fund Manager, as described in each of the PPMs, its primary duty was to "establish various [Series] for the purpose of making separate and distinct direct, indirect and secondary venture capital or growth equity investments in various leading seed-stage, early-stage, developmental-stage and later-stage private companies."

41.     According to the PPMs, each SP Fund was as a series limited liability company that was divided into segregated parts (a Series) in which investors could purchase Interests.

42.     Each Series purportedly held a set number of Pre-IPO Shares, or rights to Pre-IPO Shares, of a particular pre-IPO company.

43.     By purchasing Interests in a particular Series, an investor could gain a beneficial interest in a proportional number of the underlying Pre-IPO Shares held by the Series.

44.     For example, if a Series owned 100,000 Pre-IPO Shares of a particular pre-IPO company, an investor who purchased 2 percent of the Series would own an interest in 2,000 Pre-IPO Shares of that company.

45.     In practice, Defendants and their sales agents presented these offerings as if they were selling the Pre-IPO Shares to the investor—that is, they quoted prospective investors a price per share, the investor specified the number of shares they wished to own, and investors were then told that their capital contribution reflected a number of shares at that price per share.

46.     On its website, the Fund Manager pitches its offerings as a way for small investors to "gain access to pre-IPO investing opportunities at privately held companies and allow smaller investors to get in on portions of the investment."  The website further states that "[t]he pre-IPO

investment opportunities we offer give you the opportunity to invest in high-growth companies like
Uber and Airbnb before these companies go public." The website then offers to walk potential
investors through "the pre-IPO venture capital opportunities available and how to get pre-IPO
shares."

47.     Lachow sent hyperlinks to the PPMs, subscription agreements, purchaser
questionnaires, and pre-IPO company-specific documents to potential investors by email. Lachow's
emails also typically included the equivalent price per Pre-IPO Share at which the SP Fund Manager
was offering Interests in a given Series.

48.     Although Lachow held himself out as the "fund manager," in reality, he was the
"fund manager" in name only. Rather, Martinsen, Castillero, and Lanaia performed the SP Fund
Manager's duties from behind the scenes and directed Lachow to sign documents and send emails to
investors and prospective investors.

49.     If an investor wanted to invest in a Series, he or she would send back to the SP Fund
Manager a completed subscription agreement, purchaser questionnaire, and their money. Certain
investors also re-invested some or all of the money they made from a prior Series into a new Series.

50.     Then, if the SP Fund Manager accepted the investor into the Series (and, thus, into
an SP Fund), the SP Fund Manager sent back to the investor a counter-signed signature page from
the subscription agreement along with a "Welcome Letter," which the SP Fund Manager told
investors to retain as "evidence of your admission as a member in [a specific Series]."

51.     The Welcome Letters stated that the relevant Series had a "beneficial interest" in a
certain number of Pre-IPO Shares, stated the investor's percentage ownership of the Series, and
stated the equivalent number of underlying Pre-IPO Shares (at a specific price) in which the investor
had invested.

52.     Using a template, Lanaia prepared the vast majority of the Welcome Letters the SP Fund Manager sent out.  When Lanaia emailed the Welcome Letters back to investors, she often did so using Lachow's email address.

53.     Lachow himself also prepared Welcome Letters for the SP Fund Manager that were sent out to SP Fund investors.

54.     Martinsen, with assistance from Lanaia and Castillero, had primary responsibility for sourcing and acquiring Pre-IPO Shares on behalf of the SP Fund Manager.

55.     Martinsen, in consultation with Lanaia and Castillero, would then set the equivalent price per share at which the corresponding Series Interests would be sold to investors.

56.     Martinsen signed certain contracts to acquire Pre-IPO Shares on behalf of the SP Fund Manager, as did Lachow and Lanaia.

57.     When Lanaia signed these contracts, she signed as Lachow; Lanaia then corresponded with the third-parties holding the Pre-IPO Shares by email using either Lachow's email address or another "administrator" email address.

## II.     DEFENDANTS MISREPRESENTED THE NUMBER OF PRE-IPO SHARES THAT BACKED THE SERIES INTERESTS THEY SOLD

58.     Defendants overstated the number of Pre-IPO Shares that backed the Series Interests they sold to investors and in fact sold more Pre-IPO Shares than they obtained.

59.     But, rather than make good on their promises or return the money, Defendants misappropriated these funds (in their words, "overselling") and used it to pay themselves.

60.     Currently, the SP Funds have a collective shortfall of Pre-IPO Shares of at least **$14 million** across seven pre-IPO companies:

| Company | Share Deficit | Last Price Per Share Paid | Estimated Amount of Deficit |
|---|---|---|---|
| Automation Anywhere | 2,956 | $34.00 | $100,504.00 |
| Eat Just | 92,051 | $23.30 | $2,144,788.30 |
| Impossible Foods | 39,442 | $36.75 | $1,449,493.50 |
| Kraken | 75,728 | $55.00 | $4,165,040.00 |
| Rubrik | 94,818 | $39.60 | $3,754,792.80 |
| Scopely | 41,974 | $56.00 | $2,350,544.00 |
| Virgin Hyperloop | 3,354 | $2.65 | $8,888.10 |
| **Totals** | | | **$13,974,050.70** |

61.     Castillero, Martinsen, and Lanaia frequently discussed by text message the fact that the SP Fund Manager sold Series Interests in more Pre-IPO Shares than it had purchased.

62.     In a text message exchange on October 7, 2019, Martinsen, Castillero, and Lanaia discussed what to do with money that investors had sent in related to Series Interests in Pre-IPO Shares of the company Grab, which the SP Fund Manager had not yet purchased. When Lanaia noted that "[w]e don't have that much money in we can send the $ back," Martinsen responded that certain investors had already received Welcome Letters "[s]o sending the money back is not an option."

63.     In a text message exchange on August 19, 2020, Martinsen, Castillero, and Lanaia, Martinsen noted that the SP Fund Manager was "completely sold out" of Pre-IPO Shares of Impossible Foods, but then stated "[l]et's build some cash for [I]mpossible [Foods] first and then I'll find."

64.     In a text message exchange on February 2, 2021, Martinsen and one of Martinsen's contacts who helped him to source Pre-IPO Shares ("Contact A"), Martinsen stated: "This Rubrik is stressing me out. We r way oversold even on the 2 contracts with u. I need to close the open contracts and if I can get that other 5 mill that would be a life saver."

65.     In a text message exchange on March 14, 2021, Martinsen, Castillero and Lanaia discussed the fact that the SP Fund Manager had sold more Series Interests in Pre-IPO Shares of the company Eat Just.  Martinsen asked Castillero for a list of the investors who "didn't get . . . filled," noting that one investor "was sent a welcome letter in his investments that came in after we were sold out."

66.     In a text message exchange on March 22, 2021 Martinsen and Contact A, Martinsen asked:  "R we getting more [eat] just???"  The next day, on March 23, 2021, after Contact A told Martinsen that the share price for Eat Just had increased, Martinsen responded.  "Let's get some. Even if it's a small amount.  I oversold."  Martinsen then confirmed that he needed "about" $2 million worth of Eat Just Pre-IPO Shares.

67.     In a text message exchange on June 28, 2021, Martinsen, Castillero, and Lanaia discussed the fact that they had sold more Series Interests in Pre-IPO Shares of the company Kraken than they owned.  Martinsen asked "how many shares [of Kraken] did we sell at this point over what we bought?," after which Castillero and Martinsen agreed that they had oversold by 50,000 shares.

68.     The SP Fund Manager has operated at a Pre-IPO Share deficit for years.

69.     For example, between February 2, 2021 and March 8, 2021, the SP Fund Manager sold more than $25.5 million in Series Interests related to Pre-IPO Shares of the company UiPath.

70.     As Martinsen acknowledged routinely in text messages in early 2021, however, the SP Fund Manager was never on UiPath's capitalization table—the company's records of who owned its shares—and had never acquired a single UiPath Pre-IPO Share.

71.     When the SP Fund Manager was finally forced to admit that it could not acquire the UiPath Pre-IPO Shares it had promised, Martinsen, Castillero, and Lanaia urged their sales agents to convince these investors to move their investments to other pre-IPO companies.  Although some of

the investors did choose to invest in a different offering, ultimately, the SP Fund Manager had to refund more than $8 million to these investors.

72.     On or about February 18, 2022, Defendants agreed, in discussions with the Commission staff, to stop soliciting new investments in Series Interests.

73.     The next month, share deficits quickly became apparent.

74.     Since the end of March 2022, Martinsen has transferred more than $3.3 million from his personal bank accounts into the SP Fund Manager bank account in order to cover the purchase of two blocks of Pre-IPO Shares of Rubrik.

## III.   DEFENDANTS IMPROPERLY COMMINGLED INVESTOR FUNDS AND MADE PONZI-LIKE PAYMENTS

75.     Defendants repeatedly represented to investors that each Series would be "segregated" and, thus, not commingled with other Series.

76.     The PPMs for each of the SP Funds stated that "[e]ach Series will remain segregated from each other Series" and that "[m]embers of a Series shall be entitled to the benefits of that particular Series only and shall not be entitled to profits, losses, allocations or distributions of any other Series of which they are not a Member." The PPMs also stated that "[d]istributions are made by the [SP] Fund on a Series-by-Series basis and not on the Fund's portfolio as a whole. Thus winners are not netted against losers."

77.     The Fund Manager's public website reiterates that "[e]ach Series will remain segregated from all other Series" in response to a "Frequently Asked Question" about how investments in the SP Funds are structured.

78.     But, despite these assurances, the SP Fund Manager did not segregate the SP Fund Series at all. Although each SP Fund had separate bank accounts, in practice, the SP Fund Manager did not segregate those accounts by Series. In fact, the SP Fund Manager commingled the assets of different SP Funds and commingled the assets of the SP Funds with those of the SP Fund Manager.

79.     Specifically, the SP Fund Manager commingled funds belonging to different SP Funds in the SP Fund Manager's bank account.  On other occasions, the SP Fund Manager made transfers directly between the SP Fund bank accounts.

80.     The SP Fund Manager used these commingled funds to purchase whatever Pre-IPO Shares it needed across the various SP Funds.  For example:

   A.     In early morning hours of June 9, 2020, Martinsen asked Castillero via text message (on a chain that included Lanaia) if there is "anyway [sic] to get more money cleared today" so that they could "wire what we have" to purchase Pre-IPO Shares of Impossible Foods.  Later that day, Castillero moved a total of $608,000 into SP Fund 7 from a combination of SP Funds 2, 3, 4, 5, and 6, and used those funds (along with the funds already in the account for SP Fund 7) to pay nearly $1.5 million for Impossible Foods Pre-IPO Shares.  Castillero then confirmed to Martinsen and Lanaia via text message that he had sent these funds as discussed.

   B.     On March 16, 2021, Lanaia transferred $11,550,780 into the SP Fund Manager bank account from the bank accounts of SP Fund 1, 5, 6, 7, and SP Holdings.  These amounts were funded by transfers into these bank accounts from the corresponding brokerage accounts for these entities.  Later that day, Castillero wired $11,550,780 to purchase Pre-IPO Shares of Scopely from the SP Fund Manager bank account.

81.     The SP Fund Manager also used commingled funds to make Ponzi-like payments back to investors.  For example:

   A.     After investors in an SP Fund 2 Series filed a fraud lawsuit against the SP Fund Manager in November 2019, the SP Fund Manager refunded $358,000 to these investors on January 7 and 29, 2020.  In order to fund these payments, the SP Fund Manager transferred $308,000 into its account from SP Fund 6, $40,000 from SP Fund 2 (which was funded by new investors in a different Series) and $10,000 from SP Fund 3.

B.      On March 17, 2021, the SP Fund Manager transferred $1.5 million and $300,000 from the bank accounts of SP Fund 2 and SP Fund 4, respectively, to the bank account of SP Fund 8 in order to help fund a $2 million investor refund of SP Fund 8 Series Interests backed by the Pre-IPO Shares of UiPath, which the SP Fund Manager had been unable to acquire.

C.      On July 26, 2021, Castillero transferred $1 million from an entity he controlled into the bank account of SP Fund 7.  SP Fund 7 used these funds to cover a series of distributions to investors out of the account that same day and the following two days.  On July 30, 2021, the SP Fund Manager transferred $1 million from SP Fund 9, first to the SP Fund Manager and then to Castillero's entity, in order to refund Castillero's $1 million payment.

D.      On October 1, 2021, the SP Fund Manager made an investor distribution of $405,682.30 from SP Fund 3.  After this distribution, SP Fund 3's bank balance turned negative in the amount of $383,772.56.  On October 4, 2021, the SP Fund Manager moved $385,000 from SP Fund 7 to SP Fund 3 to cover the negative balance.

82.     Martinsen, Castillero, and Lanaia regularly discussed commingling of investor assets via text message, and each of them made such transfers over time.

83.     At times, Castillero asked Martinsen for his online bank login information so that Castillero could log in and make transfers under Martinsen's login.

84.     Neither the SP Fund Manager nor Castillero, Martinsen, or Lanaia kept records of the fees that either the SP Fund Manager or the SP Advisor purported to accrue, collect, or pay out.

85.     In fact, the general ledgers for both the SP Fund Manager and the SP Funds simply describe this type of commingling activity as "transfers" between accounts or amounts "due to/due from" these entities; they do not identify these transfers as, for example, accrued fees or other compensation owed to the SP Fund Manager or SP Adviser.

86.     Martinsen, Castillero, and Lanaia sought to identify how much they had to pay for Pre-IPO Shares and other expenses so that, as Martinsen described in a group text message on December 8, 2020, "we know what's left over for us to chop up."

87.     In total, Defendants used these commingled funds to make more than $75 million in payments to the principals—Martinsen received at least $25.4 million, Castillero received at least $24.4 million, Lanaia received at least $24.3 million, and Lachow received just under $1 million.

88.     Defendants also used these commingled funds to make nearly $48 million in payments to unregistered sales agents and more than $5.6 million more in other commission payments to broker-dealers.

89.     At times, the SP Fund Manager made these payments to its principals and sales agents by "sweeping" available funds into the SP Fund Manager's bank account from the other SP Fund bank accounts.

90.     For example, between May 18 and 22, 2020, the SP Fund Manager transferred to its own bank account a total of nearly $1.4 million from the bank accounts of SP Fund 1, SP Fund 2, SP Fund 4, SP Fund 5, SP Fund 6, and SP Fund 7.  Between May 20 and May 26, 2020, the SP Fund Manager used these funds to make payments of $255,000 to the founders ($85,000 each to Martinsen, Castillero, and Lanaia), $207,000 to sales agents, $355,300 for Pre-IPO Shares, and $570,000 to pay a refund to an investor in SP Fund 6.

91.     Similarly, on June 11, 2021, the SP Fund Manager "swept" more than $1.6 million into its bank account from SP Funds 4, 5, 7, and 8.  The same day, the SP Fund Manager used those funds to make three $500,000 payments to Martinsen, Castillero, and Lanaia, as well as $140,000 in payments to various sales agents.

## IV.   DEFENDANTS CHARGED EXCESSIVE HIDDEN MARKUPS THROUGH UNDISCLOSED PRINCIPAL TRANSACTIONS

92.   According to the PPMs and operating agreements, the SP Fund Manager could charge investors certain upfront fees—a management fee (of up to 2 percent), an expense fee (of up to 1 percent), and a due diligence fee (of up to 5 percent).

93.   The SP Fund Manager's website also references these same three fees in the response to a "Frequently Asked Question" that asks "[w]hat are the investment banking fees?"

94.   The PPMs also state that the SP Fund Manager and/or the SP Adviser could charge a "marketing or placement fee" of up to 10 percent.

95.   In practice, however, the SP Fund Manager told investors that it had waived all of these upfront fees.

96.   For example, the Welcome Letters for investors that were recruited by many of the sales agents stated that no management fee, no expense fee, and no due diligence fee were deducted from an investor's capital contribution to the SP Fund.  These Welcome Letters also made no reference to a marketing or placement fee.

97.   And, in some cases, the SP Fund Manager went even further, sending side letters to investors specifically confirming for them that it would not be charging any upfront fees at all.

98.   Lanaia was typically the person who drafted and sent these upfront fee side letters, though they were signed by either Lachow or Martinsen.

99.   In reality, however, the SP Fund Manager charged high upfront fees in the form of an undisclosed markup—that is, the difference between the price the SP Fund Manager paid for the Pre-IPO Shares and the price at which the SP Fund Manager sold corresponding Series Interests to investors.

100.   Defendants used this markup to pay upfront fees to their unregistered sales agents, and Martinsen, Castillero, and Lanaia then pocketed the remainder.

101.    In 2021, as the SP Fund Manager faced Pre-IPO Share deficits across multiple Series, these markups increased as did the payments to the founders.

102.    Beginning in June 2021, the SP Fund Manager charged markups of 57 percent for Pre-IPO Shares of Automation Anywhere—that is, it sold Series Interests at a price equivalent to $41 per share when it had purchased the Pre-IPO Shares at $26.10 per share.

103.    In November 2021, the SP Fund Manager purchased another block of Automation Anywhere Pre-IPO Shares, this time at $34 per share, to cover a portion of a share deficit where it had been selling Series Interests at a price that was equivalent to as high as $50 per share (a 47 percent markup).

104.    Between May 2021 and January 2022, the SP Fund Manager routinely sold Series Interests in Kraken Pre-IPO Shares at a price equivalent of $90 per share.  The SP Fund Manager bought these shares at prices between $47 (a 91 percent markup) and $55 (a 64 percent markup) per share.

105.    By at least June 2021 and up through February 2022, the SP Fund Manager sold Series Interests in Plaid Pre-IPO Shares at a price equivalent of $1,600 per share.  The SP Fund Manager bought these shares at prices between $900 (a 78 percent markup) and $970 (a 65 percent markup) per share.

106.    And, between July 2021 and February 2022, the SP Fund Manager sold Series Interests in Triller Pre-IPO Shares at a markup of 100 percent or more.

107.    Martinsen's recent purchases of Rubrik Pre-IPO Shares to cover parts of the share deficit were at a price of $39.60 per share.  Between October and December 2021, however, the SP Fund Manager had been charging investors a price equivalent of $65 per share.  In essence, the SP Fund Manager was selling Series Interests in Pre-IPO Shares *it did not have* at a 64 percent markup.

108.    All the while, the three founders continued to line their own pockets.  Between

January 2021 and February 2022, they paid themselves a total of over $56 million.

109.    Though the PPMs stated that "StraightPath Affiliates may, to the extent permissible

by law, receive income from [markups]" that would not be shared with the SP Funds, this statement

was false and misleading because, in reality, the SP Fund Manager's practice was *always* to charge a

markup on *every* sale of Series Interests.

110.    Moreover, these markups were not "permissible by law" because they were principal

transactions that, pursuant to Section 206(3) of the Advisers Act, required notice and written

consent from the affected investors.

111.    The SP Fund Manager sold the Pre-IPO Shares it acquired to the SP Funds as

principal (i.e., its own account), and the lion's share of these markups flowed through the SP Fund

Manager to its owners, Martinsen, Castillero, and Lanaia, each of whom served as an investment

adviser to the SP Funds through their ownership and/or work for the SP Advisor.

112.    Defendants never made the required disclosure of these principal transactions or

received the required written consent from the SP Fund investors.

113.    Neither the Welcome Letters nor any other communications to investors disclosed

these markups or the advisers' role in the transactions.

114.    Similarly, the Forms D that the SP Funds filed with the Commission also failed to

disclose these hidden fees.

115.    Even the side letters failed to disclose these fees and the amount of the markup.

116.    For example, a side letter signed by Lachow dated September 29, 2020, for an

investor in an Impossible Foods Series advised that "[t]his letter is to certify and confirm that there

are no upfront fees" and that SP Fund 8 will charge the fees listed in the PPM.  In reality, the SP

Fund Manager charged this investor a markup of 46 percent, 18 percent of which it paid to an unregistered sales agent.

117.    A side letter signed by Martinsen dated June 18, 2021, for an investor in a Triller Series advised that the letter "is to certify and confirm that there are no up front [sic] fees" and that SP Fund 7 will not charge the fees listed in the PPM.  In reality, the SP Fund Manager charged this investor a markup of 78 percent, 18 percent of which it paid to an unregistered sales agent.

## V.   THE OFFERINGS OF SERIES INTERESTS IN THE SP FUNDS VIOLATED THE SECURITIES OFFERING REGISTRATION PROVISIONS

118.    Securities Act Section 5 [15 U.S.C. § 77e] makes it unlawful for any person, directly or indirectly, to offer or sell securities, unless a registration statement is filed with the Commission and is in effect as to such offer or sale.

119.    None of the Series Interests sold by Defendants were sold pursuant to a registration statement filed with the Commission.

120.    Defendants purported to offer the Series Interests on the basis of Rule 506(c) of Regulation D [17 C.F.R. § 230.506(c)], a Commission regulation that provides a safe-harbor registration exemption under Securities Act Section 4(a)(2) for qualifying private offerings.

121.    In order to qualify for the Rule 506(c) safe-harbor, all purchasers of the securities sold must be "accredited investors"—that is, for example, individual investors who had a net worth (with their spouse) of more than $1 million or annual income exceeding $200,000 or joint income exceeding $300,000.  17 C.F.R. §§ 230.501(a)(5), (a)(6).  In addition, the issuer of the securities must take reasonable steps to verify that the purchasers of the securities are accredited investors, which may include reviewing documentation such as tax records and brokerage or bank account statements.  17 C.F.R. § 230.506(c)(2)(ii).

122.    Neither the SP Funds individually, nor the SP Fund Manager or SP Adviser on their behalf, took such reasonable steps with respect to the overwhelming majority of the Series Interests they sold to investors.

123.    The vast majority of the investments in the SP Funds were solicited by unregistered sales agents.

124.    For these investors, Defendants did little more than collect signed purchaser questionnaire—that is, self-certifications—concerning whether the investor qualified as an accredited investor.

125.    Defendants did not verify these claims by collecting any of the types of documents identified in Rule 506(c)(2)(ii).

126.    Moreover, Defendants were not entitled to rely on the Rule 506(c) safe-harbor for the vast majority of their sales of Series Interests because of Castillero and Lanaia's roles in these securities offerings during periods of time that they were either barred or suspended from association with any FINRA member.  17 C.F.R. § 230.506(d)(1)(vi).

127.    Between January 16, 2018, and April 15, 2018, during which time Lanaia was suspended from association with any FINRA member, Defendants sold more than $1.1 million in Series Interests across the SP Funds.

128.    Since February 6, 2019, the date Castillero was barred by FINRA, Defendants sold more than $376 million in Series Interests across the SP Funds, plus an additional $22.8 million in Series Interests from re-investments of monies earned from prior Series.

## VI.    STRAIGHTPATH'S SALES EFFORTS VIOLATED THE BROKER-DEALER REGISTRATION PROVISIONS

129.    Exchange Act Section 15(a)(1) makes it unlawful for any broker or dealer "to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security" unless such broker or dealer is registered with the Commission.  15 U.S.C. § 78o(a)(1).

130.    Defendants violated these provisions by hiring, training, and running a vast sales network to sell the Series Interests, to which it paid commissions typically generated by the undisclosed markups they charged the SP Funds for Pre-IPO Shares.  Martinsen, Castillero, and Lanaia then kept the remaining pieces of these markups for themselves.

131.    Defendants sold Series Interests through a vast network of sales people, which included more than 100 sales agents and at least three Commission-registered brokerage firms.

132.    Castillero and Lachow recruited the agents in part over Craigslist.  In one case, Lachow responded to a post entitled "***PHONE SALES***NO EXPERIENCE NEEDED***" with an invitation to discuss a sales agent position with the SP Fund Manager.  Lachow stated that the position would involve selling "stock in late stage multi-billion companies."  Lachow added, "We will provide your office with all of the support and training that you need to position you for continuous success."

133.    Castillero had primary responsibility for managing these sales agents.

134.    Many of these sales agents made cold calls to potential investors using lead lists and sales scripts provided by Castillero.

135.    Over time, the SP Fund Manager ran "boiler rooms," or makeshift offices used to solicit investors, located in this District, elsewhere in New York, New Jersey, and Florida.

136.    Castillero provided many of these sales agents with email addresses and business cards that identified them as employees of the SP Fund Manager.  In reality, these sales agents were not employees of the Fund Manager at all.

137.    The sales agents Defendants used were not licensed or associated with registered brokerage firms.  In fact, some of these sales agents previously had been barred from working as securities brokers by FINRA or the Commission, or had otherwise been disciplined by other federal or state agencies.     .

138.    Martinsen, Castillero, and Lanaia knew, or were reckless in not knowing, that the sales agents they recruited to sell securities for the SP Fund Manager were not associated with a registered broker at the time of those sales.

139.    Nevertheless, the SP Fund Manager paid these unregistered sales agents commissions—that is, a percentage of the amounts of money they raised for the SP Funds.

140.    Generally, the SP Fund Manager paid these sales agents an upfront commission of 10 percent of the fund invested by the investor that the sales agent either solicited or referred, though this upfront commission was, in some cases, as high as 18 percent.

141.    The SP Fund Manager also typically agreed to pay these sales agents 10 percent of the investor's "back-end carried interest"—that is, the profit on the Pre-IPO Shares after an IPO.

142.    The SP Fund Manager documented these commission agreements with is unregistered sales agent using standardized agreements called "Referral Agent Agreements."

143.    Castillero and Lanaia typically drafted the Referral Agent Agreements.

144.    At various times, either Lachow, Martinsen, Castillero, and Lanaia (on Lachow's behalf) signed the Referral Agent Agreements on behalf of the SP Fund Manager.

145.    Castillero, with assistance from Martinsen, Lanaia, and Lachow, recruited the network of unregistered sales agents who worked for the SP Fund Manager.

146.    Though Lachow held himself out as an executive at the SP Fund Manager and/or the SP Adviser, he was also an unregistered sales agent himself.

147.    Lachow had a Referral Agent Agreement that provided for the payment of an upfront cash commission of 15 percent along with 10 percent of the back-end carried interest.

148.    Between September 2020 and December 2021, Lachow solicited investments in Series Interests from at least 29 investors, which totaled at least $3.7 million.

149.    The SP Fund Manager paid Lachow commissions on the investments he solicited.

150.     Overall, between December 2017 and April 2022, the Fund Manager paid a total of nearly $48 million in commissions to these unregistered sales agents.

151.     Although Lanaia and Castillero were barred by FINRA in 2018 and 2019, respectively, after they were barred, they both continued to participate in the offerings of Series Interests and their duties remained largely unchanged.

152.     After being barred, Castillero continued to manage the SP Fund Manager's sales force, which solicited investments in the Interests, after he was barred in February 2019 through at least February 2022.

## VII.     CASTILLERO AND MARTINSEN DELETED SUBPOENAED EMAILS

153.     On November 12, 2020, the Commission staff issued an investigative subpoena to SP Holdings and its affiliates, including SP Fund Manager and the SP Adviser (the "Subpoena").

154.     Among other things, the Subpoena sought production of documents and communications concerning "all finders, marketers, consultants, or other third parties utilized by [SP Holdings, as defined in the subpoena] to identify investors." The Subpoena also sought email communications concerning "investors in investment vehicles with holdings of securities of Palantir and Lyft."

155.     The subpoena directed the recipients to respond by no later than November 27, 2020.

156.     The Commission staff served the subpoena by email, sending it to Martinsen's email address at the SP Fund Manager.

157.     As of April 14, 2021, SP Fund Manager and SP Adviser still had not fully responded to the Subpoena.

158.    That day, the Commission staff wrote Martinsen an email identifying deficiencies in the production and requesting that the documents be produced by a particular date ("April 14th Email").

159.    Among other things, Commission staff specifically requested the production of certain email communications responsive to the Subpoena: "By **May 5,** please produce all communications (including emails and text messages) with the below individuals and/or entities during the Relevant Period (defined in the subpoena as January 1, 2018 to the present). If the individuals and/or entity was provided a StraightPath email address, please also produce their emails." The list contained the names of ten sales agents the Commission staff understood had been issued StraightPathVP.com email addresses ("Request #1"). An additional nearly identical request was made for an additional 37 sales agents with a due date of May 19 ("Request #2").

160.    By May 1, 2021, Castillero had begun to contact sales agents who had been using StraightPathVP.com email addresses and informed them that they would no longer have access to these email addresses.

161.    That same day, Castillero discussed the sales agent emails with Martinsen by text message. Martinsen privately admitted in this discussion that certain sale agent emails "put[ ] us at risk." Castillero agreed, writing "[a]n asshole regulator would have a field day" with these emails.

162.    On May 5, 2021, the date Commission staff told Martinsen that communications (including email) with the first ten sales agents were due, Martinsen confided in Castillero by text message: "We r going to claim they they [sic] don't have emails and we don't. Have archives . . . "Just delete there [sic] emails. Fuck it."

163.    That same day, Castillero deleted email accounts belonging to eight different sales agents, including Sales Agents A, B, C, and D.

164.    Also that same day, Martinsen, on behalf of SP Fund Manager, wrote Commission

staff a letter stating: "Please be advised that those listed [including Sales Agents A, B, C, and D] do

not have SPVP Email addresses.  Be further advised that StraightPath Venture Partners does not

keep archived emails."

165.    On May 21, 2021, Martinsen submitted a letter to Commission staff responding in

detail to the April 14th Email writing in response to Request #1, "As previously stated, these emails

do not currently exist and our service provider . . . does not archive the emails."  In response to

Request #2 in the April 14th Email, Martinsen wrote, "[P]lease be advised that we have previously

indicated those individuals or entities we have not had an email address and I will indicate below

those who have had an email in the past.  Again, we do not archive emails and our service provider .

. . does not archive the emails."

166.    After Martinsen's email on May 21, 2021, Castillero continued to delete additional

email accounts, including sales agent email accounts, in at least June, August, September, October,

and November 2021.

## VIII.   THE SP ADVISER MADE MISREPRESENTATIONS IN ITS FORMS ADV

167.    A Form ADV is a uniform form used by investment advisers to register with the

SEC and state securities authorities.  Completed Forms ADV are available to the public.

168.    The SP Adviser made misrepresentations in its Forms ADV about the SP Funds'

fund administrator and auditor.

169.    For example, the SP Adviser's Forms ADV listed Administrator A as its outside

administrator beginning in August 2018.

170.    Administrator A, however, resigned from its role as fund administrator by at least

May 2019.

171.    Nonetheless, the SP Adviser continued to list Administrator A on the SP Adviser's Forms ADV until September 2021.

172.    Additionally, the SP Adviser listed Auditor A as its auditor in its Forms ADV beginning in January 2019.

173.    Auditor A was never engaged, however, and the SP Adviser never retained a different auditor.

174.    The SP Adviser's Forms ADV continue to list Auditor A as its auditor.

175.    Defendants provided these Forms ADV to registered broker-dealers that solicited investors in the SP Funds and certain prospective investors.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a)**
**(All Defendants)**

176.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 175.

177.    Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (i) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (ii) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

178.    By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Aiding and Abetting Violations of Securities Act Section 17(a)
### (Martinsen, Castillero, Lanaia, and Lachow)

179.    The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 175.

180.    The SP Fund Manager and the SP Adviser violated Securities Act Section 17(a) in

the offer or sale of the Series Interests.

181.    Specifically, SP Fund Manager and the SP Adviser, directly or indirectly, singly or in

concert, in the offer or sale of securities and by the use of the means or instruments of

transportation or communication in interstate commerce or the mails, (i) knowingly or recklessly

have employed one or more devices, schemes or artifices to defraud, (ii) knowingly, recklessly, or

negligently have obtained money or property by means of one or more untrue statements of a

material fact or omissions of a material fact necessary in order to make the statements made, in light

of the circumstances under which they were made, not misleading, and/or (iii) knowingly, recklessly,

or negligently have engaged in one or more transactions, practices, or courses of business which

operated or would operate as a fraud or deceit upon the purchaser.

182.    Martinsen, Castillero, Lanaia, and Lachow knowingly or recklessly provided

substantial assistance to the SP Fund Manager's and the SP Adviser's violations.

183.    By reason of the foregoing, Martinsen, Castillero, Lanaia, and Lachow are liable for

aiding and abetting the SP Fund Manager's and the SP Adviser's violations of Securities Act 17(a).

## THIRD CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (All Defendants)

184.    The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 175.

185.    Defendants, directly or indirectly, singly or in concert, in connection with the

purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or

the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed

one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a

material fact or omitted to state one or more material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading, and/or

(iii) engaged in one or more acts, practices, or courses of business which operated or would operate

as a fraud or deceit upon other persons.

186.    By reason of the foregoing, Defendants directly or indirectly, singly or in concert,

have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)]

and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### FOURTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (Martinsen, Castillero, Lanaia, and Lachow)

187.    The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 175.

188.    The SP Fund Manager and the SP Adviser violated Exchange Act Section 10(b) and

Rule 10b-5 thereunder in connection with the sale of the Series Interests.

189.    Specifically, the SP Fund Manager and the SP Adviser, directly or indirectly, singly or

in concert, in connection with the purchase or sale of securities and by the use of means or

instrumentalities of interstate commerce, or the mails, or the facilities of a national securities

exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to

defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more

material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or

courses of business which operated or would operate as a fraud or deceit upon other persons.

190.    Martinsen, Castillero, Lanaia, and Lachow knowingly or recklessly provided

substantial assistance to the SP Fund Manager's and the SP Adviser's violations.

191.    By reason of the foregoing, Martinsen, Castillero, Lanaia, and Lachow are liable for

aiding and abetting the SP Fund Manager's and the SP Adviser's violations of Exchange Act 10(b)

and Rule 10b-5 thereunder.

**FIFTH CLAIM FOR RELIEF**
**Advisers Act Section 206 and Rule 206(4)-8 Thereunder**
**(SP Adviser, Martinsen, Castillero, Lanaia, and Lachow)**

192.    The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 175.

193.    The SP Adviser, Martinsen, Castillero, Lanaia, and Lachow had an adviser-client

relationship with and therefore owed a fiduciary duty to the SP Funds.

194.    From at least 2017 to the present, while acting as an investment adviser, the SP

Adviser, Martinsen, Castillero, Lanaia, and Lachow, by use of the mails or any means or

instrumentality of interstate commerce, directly or indirectly, (i) employed a device, scheme, or

artifice to defraud a client or prospective client; (ii) engaged in transactions, practices, or courses of

business that operated as a fraud or deceit upon a client or prospective client; (iii) acting as principal

for their own account, knowingly sold securities to a client, without disclosing to such client in

writing before the completion of such transaction the capacity in which they were acting and

obtaining the consent of the client to such transaction; and/or (iv) engaged in any act, practice, or

course of business which is fraudulent, deceptive, or manipulative.

195.    By reason of the foregoing, the SP Adviser, Martinsen, Catillero, Lanaia, and Lachow directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Advisers Act Section 206(1), 206(2), 206(3), and 206(4) and Rule 206(4)-8 thereunder.

**SIXTH CLAIM FOR RELIEF**
**Aiding and Abetting Advisers Act Section 206 and Rule 206(4)-8 Thereunder**
**(SP Fund Manager, Martinsen, Castillero, Lanaia, and Lachow)**

196.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 175.

197.    The SP Adviser violated Sections 206(1), 206(2), 206(3), and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder in connection with the sale of the Series Interests.

198.    Specifically, while acting as an investment adviser, the SP Adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, (i) employed a device, scheme, or artifice to defraud a client or prospective client; (ii) engaged in transactions, practices, or courses of business that operated as a fraud or deceit upon a client or prospective client; (iii) acting as principal for their own account, knowingly sold securities to a client, without disclosing to such client in writing before the completion of such transaction the capacity in which they were acting and obtaining the consent of the client to such transaction; and/or (iv) engaged in any act, practice, or course of business which is fraudulent, deceptive, or manipulative.

199.    The SP Fund Manager, Martinsen, Castillero, and Lanaia knowingly or recklessly provided substantial assistance to the SP Adviser's violation.

200.    As a result of the forgoing, the SP Fund Manager, Martinsen, Castillero, and Lanaia are liable for aiding and abetting the SP Adviser's violations of Advisers Act Section 206 and Rule 206(4)-8 thereunder.

### SEVENTH CLAIM FOR RELIEF
### Advisers Act Section 207
### (SP Adviser, Martinsen, Castillero, Lanaia, and Lachow)

201.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 175.

202.    The SP Adviser, Martinsen, Castillero, Lanaia, and Lachow, while acting as an investment advisers, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, willfully made untrue statements material fact in a registration application or report filed with the Commission under section 80b–3 or 80b–4 of this title, or willfully to omitted to state in any such application or report any material fact which is required to be stated therein.

203.    By reason of the foregoing, the SP Adviser, Martinsen, Catillero, Lanaia, and Lachow directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Advisers Act Section 207.

### EIGHTH CLAIM FOR RELIEF
### Advisers Act Section 207
### (SP Fund Manager, Martinsen, Castillero, Lanaia, and Lachow)

204.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 175.

205.    The SP Adviser violated Advisers Act Section 207.

206.    Specifically, the SP Adviser, while acting as an investment advisers, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, willfully made untrue statements material fact in a registration application or report filed with the Commission under section 80b–3 or 80b–4 of this title, or willfully to omitted to state in any such application or report any material fact which is required to be stated therein.

207.    The SP Fund Manager, Matinsen, Castillero, and Lachow knowingly or recklessly substantially assisted the SP Adviser's violation.

208.     By reason of the foregoing, the SP Fund Manager, Martinsen, Castillero, Lanaia are liable for aiding and abetting violate the SP Adviser's violations of Advisers Act Section 207.

## NINTH CLAIM FOR RELIEF
### Violations of Securities Act Sections 5(a) and (c)
### (All Defendants)

1.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 175.

2.     From 2017 until the present, Defendants, directly or indirectly, and notwithstanding the fact that there was no applicable exemption: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (b) for the purpose of delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

3.     By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Sections 5(a) and (c).

## TENTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Securities Act Sections 5(a) and (c)
### (Martinsen, Castillero, Lanaia, and Lachow)

4.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 175.

5.     The SP Adviser and SP Fund Manager violated Securities Act Sections 5(a) and (c).

6.     Specifically, from 2017 until the present, the SP Adviser and SP Fund Manager, directly or indirectly, and notwithstanding the fact that there was no applicable exemption: (a) made

use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (b) for the purpose of delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

7.  Martinsen, Castillero, Lanaia, and Lachow knowingly or recklessly provided substantial assistance to the SP Adviser and the SP Fund Manager in the forgoing conduct.

8.  By reason of the foregoing, Martinsen, Castillero, Lanaia, and Lachow are liable for aiding and abetting the SP Adviser and the SP Fund Manager's violations of Securities Act Sections 5(a) and (c).

### ELEVENTH CLAIM FOR RELIEF
### Violations of Exchange Act Sections 15(a)
### (All Defendants)

9.  The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 175.

10.  Defendants, while not registered with the Commission as a broker or dealer or associated with a registered broker or dealer, made use of the mails or other means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities other than exempted securities or commercial paper, bankers' acceptances, or commercial bills.

11.  By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Exchange Act Section 15(a)(1).

**TWELFTH CLAIM FOR RELIEF**
**Aiding and Abetting Violations of Sections 15(a) of the Exchange Act**
**(Martinsen, Castillero, and Lanaia)**

12.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 175.

13.     Lachow violated Exchange Act Section 15(a)(1).

14.     Specifically, Lachow, while not registered with the Commission as a broker or dealer or associated with a registered broker or dealer, made use of the mails or other means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities other than exempted securities or commercial paper, bankers' acceptances, or commercial bills.

15.     Martinsen, Castillero, and Lanaia knowingly and recklessly provided substantial assistance to Lachow's violations.

16.     By reason of the foregoing, Martinsen, Castillero, and Lanaia are liable for aiding and abetting the SP Fund Manager and Lachow's violations of Exchange Act Section 15(a)(1).

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter:

**I.**

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining Defendants, their agents, servants, employees, and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Sections 5(a), 5(c), and 17(a) [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Exchange Act Sections 10(b) and 15(a) [15 U.S.C. §§ 78j(b) and 78o(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Advisers Act Sections 206(1), 206(2), 206(3), 206(4), and 207 [15 U.S.C. §§ 80b-6(1), (2), (3), and (4), 80b-7] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].;

37

## II.

An Order temporarily and preliminarily, through a Final Judgment, freezing the assets of the SP Fund Manager, the SP Adviser, Martinsen, Castillero, and Lanaia;

## III.

An Order temporarily and preliminarily, through a Final Judgment, appointing a receiver over the SP Funds, the SP Fund Manager, the SP Adviser, and the personal assets of Martinsen, Castillero, and Lanaia;

## IV.

An Order temporarily and preliminarily, through a Final Judgment, enjoining the filing of any bankruptcy, foreclosure, receivership, or other actions against the SP Funds, the SP Fund Manager, and the SP Adviser;

## V.

An Order requiring the SP Fund Manager, the SP Adviser, Martinsen, Castillero, and Lanaia to submit a verified accounting of their assets and the use of all investor funds raised by the SP Fund Manager, the SP Adviser, and the SP Funds;

## VI.

An Order temporarily and preliminarily, through the Court's decision on the Commission's application for a preliminary injunction, permitting expedited discovery;

## VII.

An Order temporarily, and preliminarily, through a Final Judgment, enjoining Defendants and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission or the receiver to relevant documents, books and records;

## VIII.

A Final Judgment ordering Defendants to disgorge the ill-gotten gains they received as a result of the violations alleged here and to pay prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5), and 78u(d)(7)];

## IX.

A Final Judgment ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C. § 80b-9(e)]; and

## X.

A Final Judgment granting any other and further relief this Court may deem just and proper.

Dated:  May 13, 2022
New York, New York

/s/ Lara S. Mehraban
LARA S. MEHRABAN
ACTING REGIONAL DIRECTOR
Sheldon L. Pollock
Steven G. Rawlings
Lee A. Greenwood
Philip A. Fortino
Megan R. Genet
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004
212-336-1060 (Greenwood)
GreenwoodL@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

         Plaintiff,

     -against-

STRAIGHTPATH VENTURE PARTNERS LLC,
*et al.,*

         Defendants.

---

22 Civ. 3897 (LAK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/14/22_

RECEIVED
JUN - 1 2022
JUDGE KAPLAN'S CHAMBERS

[~~PROPOSED~~] **CONSENT ORDER APPOINTING RECEIVER**

    **WHEREAS** this matter has come before this Court upon the emergency motion of Plaintiff

Securities and Exchange Commission ("Plaintiff" or the "Commission") to appoint a receiver in the

above-captioned action to protect investors in SP Ventures Fund LLC, SP Ventures Fund 2 LLC,

SP Ventures Fund 3 LLC, SP Ventures Fund 4 LLC, SP Ventures Fund 5 LLC, SP Ventures Fund 6

LLC, SP Ventures Fund 7 LLC, SP Ventures Fund 8 LLC, and SP Ventures Fund LLC 9

(collectively, the "SP Funds"), which are managed by Defendant StraightPath Venture Partners LLC

(the "SP Fund Manager") and which are advised by Defendant StraightPath Management LLC (the

"SP Adviser") (together, SP Funds, the SP Fund Manager, and the SP Adviser are the "Receivership

Entities");

    **WHEREAS** following the Court's entry of the Order to Show Cause, Temporary

Restraining Order, and Order Freezing Assets and Granting Other Relief (Dkt. No. 16), Defendants

filed a memorandum of law in opposition to the Commission's motion;

    **WHEREAS** the parties have consulted in good faith regarding their disputes concerning

what Court-ordered measures would be appropriate to protect investors pending the outcome of

this litigation;

**WHEREAS** to resolve these disputes and the issues raised by the Commission's motion, the parties have agreed, based on their discussions and correspondence, to the following terms concerning the appointment of a receiver without any waiver of the Defendants' rights to contest all claims, allegations, and causes of action asserted against them in this action, and without any waiver of the Individual Defendants' (as defined below) rights to later seek to modify, vacate, or terminate the receiver's appointment or to challenge the appropriateness of any actions by the receiver;

**WHEREAS** the Court finds that, based on the record of the proceedings, and for good cause shown, it accepts the parties' Proposed Consent Order Appointing Receiver for the appointment of a receiver for the purpose of marshaling and preserving the assets of the Receivership Entities and the Escrow Funds (as defined in the Stipulated and Consent Order Imposing Preliminary Injunction and Other Relief (the "PI Order")) (together, the "Receivership Assets"), as well as any assets of the Receivership Entities that are (a) held in constructive trust for the Receivership Entities as determined by the Court; (b) were fraudulently transferred out of Receivership Entities as determined by the Court; and/or (c) may otherwise be includable as assets specifically covered by this Order (collectively, the "Recoverable Assets");

**WHEREAS** this Court has subject matter jurisdiction over this action, personal jurisdiction over the Receivership Entities and Defendants Brian K. Martinsen ("Martinsen"), Michael A. Castillero ("Castillero"), Francine A. Lanaia ("Lanaia"), and Eric D. Lachow ("Lachow") (together, Martinsen, Castillero, Lanaia, and Lachow are the "Individual Defendants"), and venue properly lies in this District.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

### I.  Marshalling of Receivership Assets

This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Entities.

The Receivership Assets include, without limitation, the financial and transfer agent accounts listed on Exhibit A. The Receivership Assets and/or Recoverable Assets also include shares of, rights to shares of, and/or forward contracts concerning the shares of private companies that have the potential for sale or public offering ("Pre-IPO Shares"), including, without limitation, Pre-IPO Shares of the companies listed on Exhibit B.

Accordingly, all persons and entities with direct or indirect control over any Receivership Assets and/or Recoverable Assets other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This judicial possession and restraint shall include, but not be limited to, Receivership Assets and/or Recoverable Assets that are on deposit with financial institutions such as banks, brokerage firms, and mutual funds. This judicial possession and restraint shall also include, but not be limited to, all assets, deposits, interests and holdings that are directly or indirectly managed by the SP Fund Manager or the SP Adviser.

## II.  Appointment of the Receiver

Until further Order of this Court, Melanie L. Cyganowski is hereby appointed to serve without bond as receiver (the "Receiver") for the estate of the Receivership Entities (collectively, the "Receivership Estate").

## III.  Plan Regarding Shortfalls in Pre-IPO Shares

In the event that the Receiver determines that there is cause to believe that any of the Receivership Entities does not have enough Pre-IPO Shares to cover all outstanding investments, any of Martinsen, Castillero, or Lanaia (together, the "Named Individuals") may make a proposal to the Receiver, with notice to the Commission, to use the Escrow Funds to purchase enough Pre-IPO Shares to cover any such shortfall(s). Any such notice shall include the proposed number of Pre-

IPO Shares to be purchased, price per share, seller of the shares, and anticipated timing of closing on the share purchase.

## IV.    General Powers and Duties of the Receiver

The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed. R. Civ. P. 66, except to the extent noted otherwise below and except that the Receiver shall seek leave of Court prior to initiating any affirmative litigation against any of the Individual Defendants or their personal assets, including to bring any affirmative litigation against the personal assets of the Named Individuals ("Individual Assets").[1] The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Entities including, but not limited to, the Named Individuals, are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver or the Court.  The Receiver shall assume and control the operation of the Receivership Entities and shall pursue and preserve all of their claims.

No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities.

Subject to the specific provisions in Sections V through XVI, below, the Receiver shall have the following general powers and duties:

---

[1]    The Individual Assets of the Named Individuals include, without limitation, the accounts and other property listed on Exhibit C.

Case 1:22-mc-00113-SWS   Document 1   Filed 06/24/22   Page 44 of 80
Case 1:22-cv-03897-LAK   Document 56   Filed 06/14/22   Page 5 of 26
Case 1:22-cv-03897-LAK   Document 45   Filed 06/01/22   Page 5 of 21

A.   To use reasonable efforts to determine the nature, location, and value of all
Receivership Assets, Recoverable Assets, and property interests of the Receivership
Entities, including, but not limited to, monies, funds, securities, credits, effects,
goods, chattels, lands, premises, leases, claims, rights, economic interests, and other
assets, together with all rents, profits, dividends, interest or other income attributable
thereto, of whatever kind, which the Receivership Entities own, possess, have a
beneficial interest in, or control directly or indirectly (collectively, "Receivership
Property");

B.   To take custody, control, and possession of all Receivership Property, and records
relevant thereto, from the Receivership Entities and the Individual Defendants;

C.   To sue for and collect, recover, receive, and take into possession from third parties
all Receivership Property and records relevant thereto;

D.   To manage, control, operate, and maintain the Receivership Estate and hold in the
Receiver's possession, custody and control all Receivership Property, pending further
Order of this Court;

E.   To use Receivership Property for the benefit of the Receivership Estate, making
payments and disbursements and incurring expenses as may be necessary or
advisable in the ordinary course of business in discharging the Receiver's duties as
Receiver;

F.   To take any action which, prior to the entry of this Order, could have been taken by
the officers, directors, members, managers, trustees, and agents of the Receivership
Entities;

G.   To engage and employ persons in the Receiver's discretion to assist the Receiver in
carrying out the Receiver's duties and responsibilities hereunder, including, but not
limited to, accountants, attorneys, experts, and others that the Receiver deems
necessary to assist in carrying out the Receiver's duties and responsibilities
hereunder, subject to prior order of the Court and in accordance with the "Billing
Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and
Exchange Commission" (the "Billing Instructions");

H.   To take such action as necessary and appropriate for the preservation of
Receivership Property or to prevent the dissipation or concealment of Receivership
Property;

I.   The Receiver is authorized, without further Order of the Court, to issue subpoenas
for documents and testimony consistent with the Federal Rules of Civil Procedure;

J.   To bring such legal actions based on law or equity in any state, federal, or foreign
court as the Receiver deems necessary or appropriate in discharging the Receiver's
duties as Receiver;

K.   To pursue, resist and defend all suits, actions, claims and demands which may now
be pending or which may be brought by or asserted against the Receivership Estate;

L.   To make necessary or required filings in the counties, states, and/or jurisdictions in
which the Receivership Property is located in order to secure these assets;

M.  To propose a liquidation plan for the Receivership Property to the Court upon motion;

N.  To propose a distribution plan for the Receivership Property to investors to the Court upon motion; and

O.  To take such other action as may be approved by this Court.

With respect to any documents or communications containing information that would be protected by the attorney-client privilege or any other privilege held by any of the Receivership Entities, the Receiver shall not have the power or authority to waive any such privilege as to documents or communications that existed before the Receiver's appointment absent leave of the Court ("Pre-Appointment Privileged Materials"). To waive any privilege over such Pre-Appointment Privileged Materials, the Receiver must obtain the Court's authorization to do so upon a motion by the Receiver. Defendants shall have the right to file a response in opposition to any such motion.

## V.    Access to Information

The past and/or present officers, directors, agents, managers, members, trustees, attorneys, accountants, and employees of the Receivership Entities, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers (collectively, "Books and Records"). Notwithstanding the foregoing, the Individual Defendants and their counsel shall be under no obligation to provide any Pre-Appointment Privileged Materials to the Receiver, and the Receiver shall not be permitted to receive or review any Pre-Appointment Privileged Materials absent leave of the Court. To the extent any of the Books and Records contains information protected by any personal attorney-client privilege of any of the Individual Defendants ("Personal Privileged Materials"), the Individual

Defendants also shall be under no obligation to provide any Personal Privileged Materials to the Receiver, and the Receiver shall not be permitted to receive or review any Personal Privileged Materials absent leave of the Court.

Within fourteen (14) days of the entry of this Order, the Named Individuals shall provide to the Receiver and the Commission a sworn statement listing, to the best of their knowledge, (a) all Receivership Assets, including the bank, securities, or other financial institution accounts holding such Receivership Assets, (b) all Individual Assets, including the bank, securities, or other financial institution accounts holding such Individual Assets, and (c) all liabilities of either the Receivership Entities or the Named Individuals. The sworn statement shall also state that, to the best of the Named Individuals' knowledge, all books and records required to be provided to the Receiver by Section VI, below, have been provided to the Receiver.

All of the Individual Defendants shall cooperate fully with the Receiver in the Receiver's efforts to carry out the obligations and duties set out above, subject to the Individual Defendants' constitutional rights as noted below. To that end, the Individual Defendants shall reasonably make themselves available through counsel or in person with the consent of their counsel to provide the Receiver with information and assist the Receiver in transferring any assets covered by this Order to the Receiver's control. The Receivership Entities are also required to assist the Receiver in fulfilling the Receiver's duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

The Receivership Entities' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers, general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the

operation or administration of the Receivership Estate or the collection of funds due to the Receivership Entities or the Individual Defendants. Notwithstanding the foregoing, the Individual Defendants shall answer under oath or proffer truthful but unsworn information through their counsel answering all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the Receivership Estate or the collection of funds due to the Receivership Entities or the Individual Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure and applicable Local Civil Rules.

Notwithstanding the foregoing, the Individual Defendants shall reserve any rights they may have to decline to respond to questions or requests by the Receiver under the Fifth or Sixth Amendment of the United States Constitution, and nothing in this Order shall be construed as a waiver of their Fifth and Sixth Amendment rights.

## VI.   Access to Books, Records, and Accounts

The Receiver is authorized to take immediate possession of all assets, bank accounts, or other financial accounts, books and records and all other documents or instruments subject to this Order, with the exception of Pre-Appointment Privileged Materials as discussed above. All persons and entities having control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

The Receivership Entities as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business,

books, records, accounts, or Receivership Property and/or Recoverable Assets are hereby directed
to deliver the same to the Receiver, the Receiver's agents, and/or the Receiver's employees.

All banks, brokerage firms, financial institutions, and other persons or entities which have
possession, custody, or control of any Receivership Property or any assets or funds held by, in the
name of, or for the benefit of, the Receivership Entities that receive actual notice of this Order by
personal service, facsimile transmission or otherwise shall:

A.   Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds,
     or accounts in the name of or for the benefit of the Receivership Entities except
     upon instructions from the Receiver;

B.   Not exercise any form of set-off, alleged set-off, lien, or any form of self-help
     whatsoever, or refuse to transfer any funds or assets to the Receiver's control
     without the permission of this Court;

C.   Within five (5) business days of receipt of that notice, serve on the Receiver and
     counsel for the Commission a certified statement setting forth, with respect to each
     such account or other asset, the balance in the account or description of the assets as
     of the close of business on the date of receipt of the notice; and,

D.   Cooperate expeditiously in providing information and transferring funds, assets, and
     accounts to the Receiver or at the direction of the Receiver.

Any other third parties that may have relevant documentation or information concerning
Pre-IPO Shares, such as the companies that issued the Pre-IPO Shares, the transfer agents for those
companies, and the counterparties with whom the Receivership Entities and/or the Individual
Defendants contracted in order to acquire Pre-IPO Shares, shall cooperate with the Receiver in
fulfilling the Receiver's duties as set forth in this Order.

## VII.   Access to Real and Personal Property

The Receiver is authorized to take immediate possession of the Recoverable Assets and all
personal property of the Receivership Entities, wherever located, including but not limited to
electronically stored information, computers, laptops, hard drives, external storage drives, and any
other such memory, media or electronic storage devices, books, papers, data processing records,
evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage

records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment. Notwithstanding the foregoing, Books and Records of the Receivership Entities and Pre-Appointment Privileged Materials as well as Personal Privileged Materials shall be handled in accordance with the procedure as set forth in Section V above.

The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

## VIII.   Notice to Third Parties

The Receiver shall promptly give notice of the Receiver's appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and members of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

All persons and entities owing any obligation, debt, or distribution with respect to Recoverable Assets or Receivership Assets shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Entity had received such payment.

In furtherance of the Receiver's responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any Individual Defendants, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Entities. The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## IX.   Injunction Against Interference with Receiver

The Receivership Entities, the Individual Defendants, and all persons receiving notice of this Order by personal service, facsimile, or otherwise, are, subject to the terms of this Order, hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A.   Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include, but are not limited to,

using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.  Hinder, obstruct or otherwise interfere with the Receiver in the performance of the Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C.  Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Entity, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate the due date of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Entity or which otherwise affects any Receivership Property; or,

D.  Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

The Receiver shall promptly notify the Court and the Commission's counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## X.    Stay of Litigation

As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving:  (a) the Receiver, in his or her capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities including subsidiaries and affiliates; or (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or members sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

The action *Advisory Management Ltd. v. StraightPath Venture Partners LLC*, Civ. No. 153453/2021 (N.Y. Sup. Ct.), is an Ancillary Proceeding.

The parties to any current or prospective Ancillary Proceedings may seek relief from the provisions of this Section from the Court, after first notifying the Receiver, the Commission counsel, and the Individual Defendants' counsel of their intent to do so on three (3) business days notice so that they may provide their respective positions on the application.

## XI.   Managing Assets

The Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds") including, without limitation, the accounts described in Section VIII of the PI Order.

The Individual Defendants may formulate and propose to the Receiver plans for the liquidation and/or distribution to investors of any of the Receivership Estate, Receivership Assets, Recoverable Assets and/or Receivership Property.

If appropriate, the Receiver shall formulate and propose to the Court, on motion, plans for the liquidation and/or distribution to investors of any of the Receivership Estate, Receivership Assets, Recoverable Assets and/or Receivership Property.

The Receiver may use the Escrow Funds for any appropriate purpose, including purchasing Pre-IPO Shares to rectify any share shortfalls, provided that the Receiver obtains Court approval for

such use of the Escrow Funds through a motion to this Court.  However, as set forth in Section

VIII of the PI Order, the Receiver shall not use more than $1,150,000 of the Escrow Funds for fees

and expenses associated with the operation of the receivership (such as, for example, fees to

compensate the Receiver and persons and entities retained to assist the Receiver).  Any portion of

the Escrow Funds remaining at the end of the receivership shall be placed in a separate interest-

bearing escrow account on terms agreed upon by the parties to this Action (the "Remaining Escrow

Funds"), or ordered by the Court, in order to satisfy any judgment against the Named Individuals in

this Action.  If no judgment is entered against the Named Individuals, the escrow agent may

disburse the Remaining Escrow Funds to the Named Individuals.

Notwithstanding the foregoing, the Receiver may, without further Order of this Court,

transfer, compromise, or otherwise dispose of any Receivership Property, other than the Escrow

Funds, in the ordinary course of business, on terms and in the manner the Receiver deems most

beneficial to the Receivership Estate, and with due regard to the realization of the true and proper

value of such Receivership Property, but in no event shall the Receiver make any payments or

transfers of Receivership Property or Receivership Funds of a value in excess of $10,000.00 without

prior Order of the Court.

Upon further Order of this Court, pursuant to such procedures as may be required by this

Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized

to sell, and transfer clear title to, all real property in the Receivership Estate.

The Receiver is authorized to take all actions to manage, maintain, and/or wind-down

business operations of the Receivership Estate, including making legally required payments to

creditors, employees, and agents of the Receivership Estate and communicating with vendors,

investors, governmental and regulatory authorities, and others, as appropriate.

Case 1:22-mc-00113-SWS   Document 1   Filed 06/24/22   Page 54 of 80
Case 1:22-cv-03897-LAK   Document 56   Filed 06/14/22   Page 15 of 26
Case 1:22-cv-03897-LAK   Document 45   Filed 06/01/22   Page 15 of 21

To the extent appropriate, the Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." The Receivership Entities and the Individual Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2, subject to the Individual Defendants' constitutional rights as set forth above.

## XII.   Investigate and Prosecute Claims

Subject to the requirement, in Sections IV and X above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in the Receiver's discretion, and in consultation with the Commission's counsel, be advisable or proper to recover and/or conserve Receivership Property.

Subject to the Receiver's obligation to expend Receivership Funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after

obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing such investigations and/or actions.

The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, the Receiver's Retained Personnel (as that term is defined below), and the Receivership Estate and/or Receivership Property.

## XIII.   Bankruptcy Filings

The Receiver may, upon no less than fourteen (14) days notice to the Commission and the Individual Defendants, seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Entities. If a Receivership Entity is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity, subject to the limitations of this Order and the PI Order. Pursuant to Section IV above, the Receiver is vested with management authority for all Receivership Entities and may therefore file and manage a Chapter 11 petition.

The provisions of Section X above bar any person or entity, other than the Receiver, from placing any of the Receivership Entities in bankruptcy proceedings.

## XIV.   Liability of Receiver

Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with the Receiver's fiduciary obligations in this matter.

The Receiver and the Receiver's agents, acting within scope of such agency ("Retained Personnel"), are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor.  The Receiver shall then follow such instructions as the Court may provide.

## XV.   Recommendations and Reports

The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property.  If appropriate, the Receiver is also authorized and empowered to develop a plan for the fair, reasonable, and efficient distribution of the Receivership Property to investors in any of the SP Funds.  The Receiver shall seek Court approval by motion for any such liquidation or distribution plan.

Within thirty (30) days after the entry of this Order, the Receiver shall file and serve a full report and accounting of both Receivership Assets and Individual Assets (the "First Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets and Individual Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate. To the extent necessary, and in compliance with the Local Civil Rules in this District and/or the Court's individual rules, the Receiver may file portions of the First Status Report under seal. For good cause shown, the Receiver may seek leave of Court to extend the date by which to file the First Status Report.

Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

The Quarterly Status Report shall contain the following:

A.  A summary of the operations of the Receiver;

B.  The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the Receivership Estate;

C.  An itemization by SP Fund series of the number of Pre-IPO Shares purchased by each SP Fund series;

D.  An itemization by SP Fund series of the number of investment interests in Pre-IPO Shares sold to investors by each SP Fund series, the SP Fund Manager, or the SP Adviser;

E.  An inventory of the Pre-IPO Shares held by the Receivership Entities;

F.  A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

18

G.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

H.     A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

I.     A list of all known creditors with their addresses and the amounts of their claims;

J.     The status of any creditor claims process or proceeding, after such process or proceeding have been commenced; and

K.     The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

To the extent necessary, and in compliance with the Local Civil Rules in this District and/or the Court's individual rules, the Receiver may file portions of the Quarterly Status Report under seal.

On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XVI.   Fees, Expenses, and Accountings

Subject to the provisions in Section XI above and immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

Subject to the following provision, the Receiver is authorized to solicit persons and entities to assist the Receiver in carrying out the duties and responsibilities described in this Order (i.e., Retained Personnel). The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

Case 1:22-mc-00113-SWS   Document 1   Filed 06/24/22   Page 59 of 80
Case 1:22-cv-03897-LAK   Document 56   Filed 06/14/22   Page 20 of 26
Case 1:22-cv-03897-LAK   Document 45   Filed 06/01/22   Page 20 of 21

The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the Billing Instructions agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by the Commission.

All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court in the Commission staff's discretion or such other percentage holdback as the Court may order on its own motion or on the request of the Commission or the Individual Defendants. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

Each Quarterly Fee Application shall:

A. Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B. Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express, or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by the Commission's staff, as well as the Receiver's final application for compensation and expense reimbursement.

### XVII.  Defendants' Rights to Object

Nothing herein shall be construed to prevent the Individual Defendants from filing or opposing any motions concerning the receivership or any actions or omissions by the Receiver.

**SO ORDERED.**

Dated:  \_June 14\_, 2022
New York, New York

_____
Hon. Lewis A. Kaplan
United States District Judge

Case 1:22-mc-00113-SWS   Document 1   Filed 06/24/22   Page 61 of 80
Case 1:22-cv-03897-LAK   Document 56   Filed 06/14/22   Page 22 of 26
Case 1:22-cv-03897-LAK   Document 45-1   Filed 06/01/22   Page 1 of 2

EXHIBIT A*

| Account Name | Financial Institution | Account Type | Last Four Digits of Account Number |
|---|---|---|---|
| SP Venture Partners LLC | TD Ameritrade | Brokerage | 1351 |
| SP Ventures Fund 2 LLC | Signature Bank | Bank | 4495 |
| SP Ventures Fund 2 LLC | Axos Clearing | Brokerage | 0887 |
| SP Ventures Fund 2 LLC | Pershing | Brokerage | 8866 |
| SP Ventures Fund 2 LLC | RBC | Brokerage | 4659 |
| SP Ventures Fund 2 LLC | TD Ameritrade | Brokerage | 1363 |
| SP Ventures Fund 3 LLC | Signature Bank | Bank | 4883 |
| SP Ventures Fund 3 LLC | Axos Clearing | Brokerage | 1083 |
| SP Ventures Fund 3 LLC | Axos Clearing | Brokerage | 1202 |
| SP Ventures Fund 3 LLC | Pershing | Brokerage | 8874 |
| SP Ventures Fund 3 LLC | RBC | Brokerage | 4669 |
| SP Ventures Fund 4 LLC | Signature Bank | Bank | 8005 |
| SP Ventures Fund 4 LLC | Axos Clearing | Brokerage | 3933 |
| SP Ventures Fund 4 LLC | Pershing | Brokerage | 8882 |
| SP Ventures Fund 4 LLC | RBC | Brokerage | 4861 |
| SP Ventures Fund 5 LLC | Signature Bank | Bank | 8080 |
| SP Ventures Fund 5 LLC | Axos Clearing | Brokerage | 8131 |
| SP Ventures Fund 5 LLC | Pershing | Brokerage | 8890 |
| SP Ventures Fund 5 LLC | RBC | Brokerage | 4862 |
| SP Ventures Fund 6 LLC | Signature Bank | Bank | 8099 |
| SP Ventures Fund 6 LLC | Axos Clearing | Brokerage | 5683 |
| SP Ventures Fund 6 LLC | Pershing | Brokerage | 8908 |
| SP Ventures Fund 6 LLC | RBC | Brokerage | 4868 |
| SP Ventures Fund 7 LLC | Signature Bank | Bank | 3459 |
| SP Ventures Fund 7 LLC | Axos Clearing | Brokerage | 5580 |
| SP Ventures Fund 7 LLC | Pershing | Brokerage | 8916 |
| SP Ventures Fund 7 LLC | RBC | Brokerage | 4869 |
| SP Ventures Fund 8 LLC | Signature Bank | Bank | 3467 |
| SP Ventures Fund 8 LLC | Axos Clearing | Brokerage | 0017 |
| SP Ventures Fund 8 LLC | Axos Clearing | Brokerage | 2953 |
| SP Ventures Fund 8 LLC | Pershing | Brokerage | 8924 |
| SP Ventures Fund 8 LLC | RBC | Brokerage | 2756 |
| SP Ventures Fund 8 LLC | StoneX Financial | Brokerage | 4098 |

| SP Ventures Fund 9 LLC | Signature Bank | Bank | 5329 |
|---|---|---|---|
| SP Ventures Fund LLC | JPMorgan Chase | Bank | 9821 |
| SP Ventures Fund LLC | Signature Bank | Bank | 2298 |
| SP Ventures Fund LLC | Axos Clearing | Brokerage | 3063 |
| SP Ventures Fund LLC | Pershing | Brokerage | 8791 |
| SP Ventures Fund LLC | RBC | Brokerage | 4658 |
| SP Ventures Fund LLC | TD Ameritrade | Brokerage | 1330 |
| StraightPath Holdings Inc | JPMorgan Chase | Bank | 2527 |
| StraightPath Holdings LLC | Signature Bank | Bank | 2670 |
| StraightPath Management Inc | JPMorgan Chase | Bank | 9678 |
| StraightPath Management LLC | Signature Bank | Bank | 2689 |
| Straightpath Venture Partners | Axos Clearing | Brokerage | 0163 |
| Straightpath Venture Partners | RBC | Brokerage | 4657 |
| Straightpath Venture Partners Inc | JPMorgan Chase | Bank | 7691 |
| StraightPath Venture Partners LLC | Signature Bank | Bank | 2662 |
| Straightpath Venture Ptnrs LLC | Pershing | Brokerage | 8767 |
| StraightPath Venture Partners LLC (Blend securities) | Computershare | Transfer Agent | 3042 |

*Inclusion of these assets is not an admission or reference that any such asset constitutes, is derived from, or is traceable to proceeds of the alleged securities law violations asserted by the SEC.

Case 1:22-mc-00113-SWS   Document 1   Filed 06/24/22   Page 63 of 80
Case 1:22-cv-03897-LAK   Document 56-2   Filed 06/14/22   Page 24 of 26
Case 1:22-cv-03897-LAK   Document 45-2   Filed 06/01/22   Page 1 of 1

EXHIBIT B*

| Pre-IPO Shares |
| --- |
| Automation Anywhere |
| Chime |
| Dataminr |
| Eat Just |
| Flexport |
| Impossible Foods |
| Insurance Zebra |
| Klarna |
| Kraken |
| Plaid |
| Rubrik |
| Scopely |
| SpaceX |
| ThoughtSpot |
| Triller |
| Virgin Hyperloop |
| Zipline |

*Inclusion of these assets is not an admission or reference that any such asset constitutes, is derived from, or is traceable to proceeds of the alleged securities law violations asserted by the SEC.

EXHIBIT C*

| Personal Financial Accounts | | | |
|---|---|---|---|
| Account Name | Financial Institution | Account Type | Last Four Digits of Account Number |
| **Brian Martinsen** | | | |
| Niss LLC | Chase Bank | Bank Savings | 2839 |
| Niss LLC | Chase Bank | Bank Checking | 5267 |
| BKM Consulting | Chase Bank | Bank Savings | 8616 |
| BKM Consulting | Chase Bank | Bank Checking | 3967 |
| BKM Consulting | Chase Bank | Bank Checking | 5668 |
| Brian and Amanda | Chase Bank | Bank Savings | 2655 |
| Brian Martinsen | Chase Bank | Bank Savings | 5703 |
| Niss LLC | Charles Schwab | Brokerage | 1015 |
| BKM Consulting | Charles Schwab | Brokerage | 437 |
| BKM Consulting SEP IRA Brian and Amanda | Charles Schwab | Brokerage | 489 |
| Brian Martinsen | Coinbase Account | Custodial Cryptocurrency | n/a |
| **Michael Castillero** | | | |
| Charee Corp. | Chase Bank | Bank | 6776 |
| Charee Corp. | Chase Bank | Bank | 6780 |
| Charee Corp. | Wells Fargo | Bank | 1533 |
| Michael Castillero | Citibank | Bank | 6147 |
| Michael Castillero | Bank of America | Bank | 576 |
| Michael Castillero - Individually | TD Ameritrade | Brokerage | 1734 |
| Michael Castillero - SEP IRA | TD Ameritrade | Brokerage | 2267 |
| Michael Castillero | Coinbase Account | Custodial Cryptocurrency | n/a |
| 24 Haywood LLC | Chase Bank | Bank | 6776 |
| 24 Haywood LLC | Chase Bank | Bank Savings | 9589 |
| Nikki Castillero** | Chase Bank | Bank Checking | 4548 |
| **Francine Lanaia** | | | |
| Francine Lanaia | Capital One | Bank Checking | 1986 |
| Francine Lanaia | Capital One | Bank Savings | 201 |
| Francine Lanaia | Bethpage Federal Credit Union | Credit Union | 5754 |
| Francine Lanaia | Jovia Credit Union | Credit Union | 1901 |
| Francine Lanaia | Chase Bank | Bank | 9297 |
| Francine Lanaia | TD Bank | Bank | |

| Francine Lanaia | Ameriprise | Brokerage | 5133 |
| Francine Lanaia - Individually | TD Ameritrade | Brokerage | 5519 |
| Francine Lanaia - SEP IRA | TD Ameritrade | Brokerage | 7520 |

| Other Personal Assets |
| --- |
| **Brian Martinsen** |
| Vehicle # 1 License Plate XXX-XXX |
| Vehicle # 2 License Plate XXX-XXX |
| Vehicle # 3 License Plate XXX-XXX |
| Watches/Jewelry |
| Prop plane |
| Shared ownership Boat (with Michael Castillero) |
| Boat |
| **Michael Castillero** |
| Vehicle # 1 License Plate XXX-XXX |
| Vehicle # 2 License Plate XXX-XXX |
| Vehicle # 3 License Plate XXX-XXX |
| Vehicle # 4 License Plate XXX-XXX |
| Vehicle # 5 License Plate XXX-XXX |
| Watches/Jewelry |
| Shared ownership Boat (with Brian Martinsen) |
| Commodities (Gold) |
| **Francine Lanaia** |
| Vehicle # 1 License Plate XXX-XXX |
| Vehicle # 2 License Plate XXX-XXX |
| Commodities (Gold) |

*Exhibit C consists of material individual assets of Brian Martinsen, Michael Castillero and Francine Lanaia that have been identified based on good faith efforts under the time constraints imposed as a result of the SEC's pending motion and request for expedited discovery. Inclusion of these assets is not an admission or reference that any such asset constitutes, is derived from, or is traceable to proceeds of the alleged securities law violations asserted by the SEC.

**Inclusion of Chase Bank Account ending -4548 is not an admission that Brian Martinsen, Fran Lanaia, or Michael Castillero have direct or indirect ownership of this property or a legal property interest in this property.

Query    Reports    Utilities    Help    What's New    Log Out

ECF

# U.S. District Court
# Southern District of New York (Foley Square)
# CIVIL DOCKET FOR CASE #: 1:22-cv-03897-LAK

| | |
|---|---|
| Securities and Exchange Commission v. Straightpath Venture Partners, LLC et al | Date Filed: 05/13/2022 |
| Assigned to: Judge Lewis A. Kaplan | Jury Demand: Plaintiff |
| Cause: 15:77 Securities Fraud | Nature of Suit: 850 |
| | Securities/Commodities |
| | Jurisdiction: U.S. Government Plaintiff |

**Plaintiff**

**Securities and Exchange Commission**   represented by   **Philip Andrew Fortino**
Securities and Exchange Commission
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
212-336-1014
Email: fortinop@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lee Attix Greenwood**
U.S. Securities and Exchange Commission
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
212-336-1060
Email: greenwoodl@sec.gov
*ATTORNEY TO BE NOTICED*

**Lara Shalov Mehraban**
Securities & Exchange Commission (3 WFC)
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-0591
Email: mehrabanl@sec.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Straightpath Venture Partners, LLC**       represented by   **Scott Neal Sherman**
                                                              Nelson Mullins Scarborough & Riley LLP
                                                              201 17th St NW
                                                              Ste 1700
                                                              Atlanta, GA 30363
                                                              404-322-6231
                                                              Fax: 404-322-6338
                                                              Email: scott.sherman@nelsonmullins.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian T Markley**
                                                              Cahill Gordon & Reindel LLP
                                                              Cahill Gordon & Reindel LLP
                                                              32 Old Slip
                                                              10005
                                                              New York, NY 10005
                                                              212-701-3230
                                                              Email: bmarkley@cahill.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Samson Aaron Enzer**
                                                              Cahill Gordon & Reindel LLP
                                                              32 Old Slip
                                                              New York, NY 10005
                                                              212-701-3000
                                                              Email: senzer@cahill.com
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Straightpath Management, LLC**             represented by   **Scott Neal Sherman**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian T Markley**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Samson Aaron Enzer**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Brian K. Martinsen**                        represented by   **Scott Neal Sherman**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian T Markley**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Samson Aaron Enzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael A. Castillero**                    represented by   **Scott Neal Sherman**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian T Markley**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Samson Aaron Enzer**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Francine A. Lanaia**                       represented by   **Scott Neal Sherman**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian T Markley**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Samson Aaron Enzer**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Eric D. Lachow**                           represented by   **Scott Neal Sherman**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian T Markley**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Samson Aaron Enzer**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Receiver**

| | Receiver | | represented by | **Melanie L. Cyganowski** |
| --- | --- | --- | --- | --- |

**Receiver**                      represented by    **Melanie L. Cyganowski**
Otterbourg P.C.
230 Park Avenue
New York, NY 10169
(212)-661-9100
Fax: 212 682 6104
Email: mcyganowski@oshr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Receiver**

**Court-Appointed Receiver**             represented by    **Melanie L. Cyganowski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Receiver**

**Proposed Counsel for Melanie L.**        represented by    **Erik Bradley Weinick**
**Cyganowski, as Court-Appointed**                               Otterbourg P.C.
**Receiver**                                                230 Park Avenue
New York, NY 10169
(212)661-9100
Fax: (212)368-7107
Email: eweinick@oshr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Melanie L. Cyganowski**

| Date Filed | # | Docket Text |
| --- | --- | --- |
| 05/13/2022 | 1 | COMPLAINT against Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC. Document filed by Securities and Exchange Commission..(Mehraban, Lara) (Entered: 05/13/2022) |
| 05/13/2022 | 2 | NOTICE OF APPEARANCE by Philip Andrew Fortino on behalf of Securities and Exchange Commission..(Fortino, Philip) (Entered: 05/13/2022) |
| 05/13/2022 | 3 | NOTICE OF APPEARANCE by Lee Attix Greenwood on behalf of Securities and Exchange Commission..(Greenwood, Lee) (Entered: 05/13/2022) |
| 05/13/2022 | 4 | CIVIL COVER SHEET filed..(Fortino, Philip) (Entered: 05/13/2022) |
| 05/13/2022 | 5 | EMERGENCY MOTION for Temporary Restraining Order . Document filed by Securities and Exchange Commission..(Greenwood, Lee) **(Refer to ECF Rule 13.19(b) and (c) for directions regarding promptly alerting the court to this filing.** <br><br> **)** (Entered: 05/13/2022) |

| 05/13/2022 | 6 | PROPOSED ORDER TO SHOW CAUSE WITH EMERGENCY RELIEF. Document filed by Securities and Exchange Commission. Related Document Number: 5 ..(Greenwood, Lee) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** (Entered: 05/13/2022) |
| 05/13/2022 | 7 | PROPOSED ORDER. Document filed by Securities and Exchange Commission. Related Document Number: 5 ..(Greenwood, Lee) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 05/13/2022) |
| 05/13/2022 | 8 | MEMORANDUM OF LAW in Support re: 5 EMERGENCY MOTION for Temporary Restraining Order . . Document filed by Securities and Exchange Commission.. (Greenwood, Lee) (Entered: 05/13/2022) |
| 05/13/2022 | 9 | DECLARATION of Steven G. Rawlings in Support re: 5 EMERGENCY MOTION for Temporary Restraining Order .. Document filed by Securities and Exchange Commission..(Greenwood, Lee) (Entered: 05/13/2022) |
| 05/13/2022 | 10 | DECLARATION of Douglas J. Smith in Support re: 5 EMERGENCY MOTION for Temporary Restraining Order .. Document filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit Summary of Amounts Raised, # 2 Exhibit Amounts Raised & Refunded, # 3 Exhibit Summary of Shortfalls, # 4 Exhibit Shortfall Details, # 5 Exhibit Summary of Commingling, # 6 Exhibit Summary of Payments to Principals, # 7 Exhibit Payments to Principals (Detail), # 8 Exhibit Average Markups, # 9 Exhibit Summary of Bank Account Balances, # 10 Exhibit Summary of Amounts Sent for Pre-IPO Shares).(Greenwood, Lee) (Entered: 05/13/2022) |
| 05/13/2022 | 11 | DECLARATION of Debbie Chan in Support re: 5 EMERGENCY MOTION for Temporary Restraining Order .. Document filed by Securities and Exchange Commission..(Greenwood, Lee) (Entered: 05/13/2022) |
| 05/13/2022 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Lewis A. Kaplan. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges /district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(vf) (Entered: 05/13/2022) |
| 05/13/2022 | | Magistrate Judge Robert W. Lehrburger is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files /2018-06/AO-3.pdf. (vf) (Entered: 05/13/2022) |
| 05/13/2022 | | Case Designated ECF. (vf) (Entered: 05/13/2022) |
| 05/13/2022 | 12 | DECLARATION of Megan Genet in Support re: 5 EMERGENCY MOTION for Temporary Restraining Order .. Document filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 |

| | | |
|---|---|---|
| | | Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39).(Greenwood, Lee) (Entered: 05/13/2022) |
| 05/13/2022 | 13 | NOTICE OF APPEARANCE by Samson Aaron Enzer on behalf of Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Enzer, Samson) (Entered: 05/13/2022) |
| 05/13/2022 | 14 | NOTICE OF APPEARANCE by Brian T Markley on behalf of Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Markley, Brian) (Entered: 05/13/2022) |
| 05/13/2022 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER TO SHOW CAUSE WITH EMERGENCY RELIEF. Document No. 6 Proposed Order to Show Cause With Emergency Relief, was reviewed and approved as to form. (nd) (Entered: 05/13/2022) |
| 05/13/2022 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 7 Proposed Order was reviewed and approved as to form. (nd) (Entered: 05/13/2022) |
| 05/13/2022 | | Oral Argument set for 5/13/2022 at 03:00 PM before Judge Lewis A. Kaplan via video-conference. Counsel of record have been emailed invites to join the video-conference. Public and press may dial in to listen. Listeners are asked to mute their phones upon joining. Participants and listeners are reminded that recording or re-broadcasting of the conference in whole or in part is prohibited by Court rules. +1 917-933-2166 Phone Conference ID: 503 341 343# (Mohan, Andrew) (Entered: 05/13/2022) |
| 05/13/2022 | 15 | RESPONSE in Opposition to Motion re: 5 EMERGENCY MOTION for Temporary Restraining Order . . Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Enzer, Samson) (Entered: 05/13/2022) |
| 05/13/2022 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan via video-conference: Oral Argument held on 5/13/2022 re: 5 EMERGENCY MOTION for Temporary Restraining Order . filed by Securities and Exchange Commission. (Court Reporter Raquel Robles) (Mohan, Andrew) (Entered: 05/13/2022) |
| 05/13/2022 | 16 | ORDER TO SHOW CAUSE, TEMPORARY RESTRAINING ORDER, AND ORDER FREEZING ASSETS, AND GRANTING OTHER RELIEF: The Court has considered (1) the Complaint filed by Plaintiff on May 13, 2022; (2) the Declaration of Douglas Smith filed on May 13, 2022, and the exhibits thereto; (3) the Declaration of Megan Genet filed on May 13, 2022, and the exhibits thereto; (4) the Local Civil Rule 6.1(d) Declaration of Steven Rawlings filed on May 13, 2022; and (5) Plaintiffs Memorandum of Law in Support of its Emergency Application for an Order to Show Cause, Temporary Restraining Order, Preliminary Injunction, Asses Freeze, Receiver, and Other Relief, filed on May 13, 2022 as well as defendant's written submission and oral argument. NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants show cause, if there are any, to this Court at 3:00p.m. on the 26th of May 2022, in Room 21B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, why this Court should not enter an Order pursuant to Rule 65 of the Federal Rules of Civil Procedure, Securities Act Section 20(b), Exchange Act Section 21(d)(1), and Advisers Act Section 209 preliminarily enjoining Defendants from Securities Act Sections S(a), S(c) and 17(a); Exchange Act Sections 10(b) and 15(a) and Rule 106-5 |

thereunder; and Advise.rs Act Section 206 and Rule 206(4)-8 thereunder. IT IS FURTHER ORDERED that the SP Fund Manager, the SP Adviser, Martinsen, Castillero, and Lanaia show cause at that time why this Court should not also enter an Order appointing Receiver for the Receivership Entities and over the Individual assets. As further set forth in this order. IT IS FURTHER ORDERED that, pending a hearing and determination of Plaintiffs application for a preliminary injunction, all banks, brokerage and other financial institutions and other persons or entities which receive actual notice of this Order by personal service or otherwise, including facsimile transmissions, electronic mail, or overnight delivery service, holding any funds or other assets in the name, for the direct or indirect benefit, or under the direct or indirect control of the SP Fund Manager, the SP Adviser, Martinsen, Castillero, and Lanaia or over which they exercise actual or apparent investment or other authority (including assets in the name of the SP Fund Manager, the SP Adviser, Martinsen, Castillero, and Lanaia), in whatever form such assets may presently exist and wherever located including but not limited to all such funds held in the accounts listed in Exhibit A and which active consent and participation where any of the SP Fund Manager, The SP Adviser, Martinsen, Castillero, and Lanaia, sale, As further set forth in this order. IT IS FURTHER ORDERED that discovery in advance of a hearing on Plaintiffs application for a preliminary injunction is expedited as follows: pursuant to Rules 26, 30, 31, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure, and without the requirement of a meeting pursuant to Fed. R. Civ. P. 26(f), the parties and the Receiver may: (1) Take depositions, subject to two calendar days; notice by facsimile, email or otherwise, (2) Obtain the production of documents, within three calendar days from service by facsimile, email, or otherwise of a request or subpoena from any persons or entities, including non-party witnesses; As further set forth in this Order. IT IS FURTHER ORDERED that Defendants shall file any opposing papers in response to this Order to Show Cause above no later than May 20, 2022. Service shall be made either by ECF or by email on Plaintiff's counsel. Plaintiff shall have until May 25, 2022 to file any reply papers upon Defendants, or upon their counsel, if counsel shall have made an appearance in this action. IT IS FURTHER ORDERED that this Order shall be, and is, binding upon Defendants, and each of their respective officers, agents, servants, employees, attorneys-in-fact, subsidiaries, affiliates and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 5/13/2022) ( Show Cause Hearing set for 5/26/2022 at 03:00 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan.), ( Replies due by 5/25/2022.) Show Cause Response due by 5/20/2022. (ks) (Entered: 05/13/2022)

| 05/17/2022 | 17 | MOTION for Scott N. Sherman to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-26157272. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Markley, Brian) (Entered: 05/17/2022) |
| 05/17/2022 | 18 | AFFIDAVIT of Scott N. Sherman in Support re: 17 MOTION for Scott N. Sherman to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-26157272. **Motion and supporting papers to be reviewed by Clerk's Office staff.**. Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC. (Attachments: # 1 Exhibit A - Certificate of Good Standing, Georgia, # 2 Exhibit B - Certificate of Good Standing - Florida, # 3 Exhibit C - Certificate of Good Standing - DC, # 4 Exhibit D - Certificate of Good Standing - Virginia, # 5 Text of Proposed Order |

| | | Proposed Order).(Markley, Brian) (Entered: 05/17/2022) |
|---|---|---|
| 05/18/2022 | | Dial-In Information: The 5/26/2022 show cause hearing has been adjourned to a new date of 6/1/22 at 3:00 PM in person. Audio access is available by dial-in for the public, press, and non-participating counsel. The dial-in number is 1-888-363-4749 and enter conference code 7664205#. It is prohibited by Court rules for listeners to record or re-broadcast the hearing in whole or in part. (Mohan, Andrew) Modified on 5/25/2022 (Mohan, Andrew). (Entered: 05/18/2022) |
| 05/18/2022 | 19 | MEMO ENDORSED ORDER granting 17 Motion for Scott N. Sherman to Appear Pro Hac Vice. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Lewis A. Kaplan on 5/18/22) (yv) (Entered: 05/18/2022) |
| 05/18/2022 | 20 | NOTICE OF APPEARANCE by Scott Neal Sherman on behalf of Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Sherman, Scott) (Entered: 05/18/2022) |
| 05/20/2022 | 21 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for Joshua R. Lewin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-26176874. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Markley, Brian) Modified on 5/23/2022 (sgz). (Entered: 05/20/2022) |
| 05/20/2022 | 22 | AFFIDAVIT of Joshua R. Lewin in Support re: 21 MOTION for Joshua R. Lewin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-26176874. **Motion and supporting papers to be reviewed by Clerk's Office staff..** Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC. (Attachments: # 1 Exhibit A - Certificate of Good Standing, Georgia, # 2 Exhibit B - Certificate of Good Standing - Florida, # 3 Text of Proposed Order Proposed Order). (Markley, Brian) (Entered: 05/20/2022) |
| 05/20/2022 | 23 | DECLARATION of Scott N. Sherman in Opposition re: 5 EMERGENCY MOTION for Temporary Restraining Order .. Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC. (Attachments: # 1 Exhibit 1 - Letter to SEC from Straightpath, # 2 Exhibit 2 - Copy of Communications referred to in presentation, # 3 Exhibit 3 - Correspondence, # 4 Exhibit 4 - Press Release, # 5 Exhibit 5 - Deposition Transcript, # 6 Exhibit 6 - Charts).(Markley, Brian) (Entered: 05/20/2022) |
| 05/20/2022 | 24 | DECLARATION of Brian Markley in Opposition re: 5 EMERGENCY MOTION for Temporary Restraining Order .. Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC. (Attachments: # 1 Exhibit 1 - Amended Order Appointing Monitor).(Markley, Brian) (Entered: 05/20/2022) |
| 05/21/2022 | 25 | MEMORANDUM OF LAW in Opposition re: 5 EMERGENCY MOTION for Temporary Restraining Order . . Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Markley, Brian) (Entered: 05/21/2022) |

| 05/23/2022 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 22 Affidavit in Support of Motion,, 21 MOTION for Joshua R. Lewin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-26176874. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): Affidavit Missing Courts Admitted To;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF under the same Motion to Appear Pro Hac Vice and include the Courts you are admitted to in the Affidavit - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order. (sgz)** (Entered: 05/23/2022) |
|---|---|---|
| 05/23/2022 | 26 | LETTER MOTION to Compel the SEC to respond to two Document Requests addressed to Judge Lewis A. Kaplan from Samson Enzer and Brian Markley dated May 23, 2022. Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC. (Attachments: # 1 Affidavit Declaration of Good Faith Attempts, # 2 Exhibit 1 - Excerpted Responses and Objections).(Enzer, Samson) (Entered: 05/23/2022) |
| 05/23/2022 | 27 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Joshua R. Lewin to Appear Pro Hac Vice *(Receipt No. ANYSDC-26176874)*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC. (Attachments: # 1 Affidavit Joshua R. Lewin Affidavit in Support of Pro Hac Vice Application, # 2 Exhibit A - Certificate of Good Standing, Georgia, # 3 Exhibit B - Certificate of Good Standing, Florida).(Markley, Brian) Modified on 5/24/2022 (sgz). (Entered: 05/23/2022) |
| 05/23/2022 | 28 | LETTER MOTION for Discovery *Protective Order* addressed to Judge Lewis A. Kaplan from Philip A. Fortino dated May 23, 2022. Document filed by Securities and Exchange Commission..(Fortino, Philip) (Entered: 05/23/2022) |
| 05/23/2022 | 29 | ORDER with respect to 28 Letter Motion for Discovery. The deposition is stayed pending determination of this motion. Defendants' opposing papers shall be filed no later than close of business 5/25/2022. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 5/23/2022) (tg) (Entered: 05/23/2022) |
| 05/23/2022 | | Set/Reset Deadlines: Responses due by 5/25/2022 (tg) (Entered: 05/23/2022) |
| 05/23/2022 | 30 | TRANSCRIPT of Proceedings re: CONFERENCE held on 5/13/2022 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Raquel Robles, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/13/2022. Redacted Transcript Deadline set for 6/23/2022. Release of Transcript Restriction set for 8/22/2022..(Moya, Goretti) (Entered: 05/23/2022) |

| 05/23/2022 | 31 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 5/13/22 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 05/23/2022) |
|---|---|---|
| 05/24/2022 | 32 | JOINT LETTER MOTION to Adjourn Conference *on Order to Show Cause* addressed to Judge Lewis A. Kaplan from Plaintiff Securities and Exchange Commission dated May 24, 2022., JOINT LETTER MOTION for Extension of Time to File Response/Reply as to 16 Order to Show Cause,,,,,,,,,,,,,,,,,,, Set Deadlines,,,,,,,,,,,,,,,,,,, 29 Order on Motion for Discovery, addressed to Judge Lewis A. Kaplan from Plaintiff Securities and Exchange Commission dated May 24, 2022. Document filed by Securities and Exchange Commission..(Greenwood, Lee) (Entered: 05/24/2022) |
| 05/24/2022 | 33 | ORDER granting 32 Letter Motion to Adjourn Conference; granting 32 Letter Motion for Extension of Time to File Response/Reply re 32 JOINT LETTER MOTION to Adjourn Conference *on Order to Show Cause* addressed to Judge Lewis A. Kaplan from Plaintiff Securities and Exchange Commission dated May 24, 2022.JOINT LETTER MOTION for Extension of Time to File Response/Reply as to 16 Order to Show Cause,,,,,,,,,,,,,,,,,,, Set Deadlines,,,,,,,,,,,,,,,,,,, 29 Order on Motion for Discovery, addressed to Judge Lewis A. Kaplan from Plaintiff Secur The argument is adjourned until June 1, 2022 at 3pm. The deadlines are extended as requested. The temporary restraining Order and Order freezing assess and certain other relief shall remain in effect, on consent, pending the determination of the motion for a preliminary injunction and other relief. SO ORDERED.. (Signed by Judge Lewis A. Kaplan on 5/24/2022) ( Show Cause Hearing set for 6/1/2022 at 03:00 PM before Judge Lewis A. Kaplan., Replies due by 5/27/2022.) (ks) (Entered: 05/24/2022) |
| 05/24/2022 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 27 MOTION for Joshua R. Lewin to Appear Pro Hac Vice *(Receipt No. ANYSDC-26176874)*. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Proposed Order; Wet Signature Needed On Motion;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (sgz)** (Entered: 05/24/2022) |
| 05/25/2022 | 34 | LETTER addressed to Judge Lewis A. Kaplan from Brian Markley and Samson Enzer dated 5/23/22 re: request that they be permitted to appear in person, regardless of whether the SEC appears virtually. Document filed by Straightpath Management, LLC, Straightpath Venture Partners, LLC.(yv) (Entered: 05/25/2022) |
| 05/25/2022 | 35 | ENDORSED LETTER addressed to Judge Lewis A. Kaplan dated 5/23/22 re: request permission to convert the Order to Show Cause hearing scheduled for May 26, 2022, to a virtual hearing in light of a COVID-related issue and (2) to seek clarification as to whether the Court intends to hold an evidentiary hearing on May 26 or simply oral argument. ENDORSEMENT: The Commission's reliance, as a predicate for the drawing of adverse inferences, on the fact that the defendants have executed or agreed to execute declarations in which they assert their Fifth Amendment privilege in lieu of appearing for depositions is misplaced. While it often is appropriate to draw adverse inferences in |

| | | |
|---|---|---|
| | | a civil case from an invocation of the privilege in response to particular questions, a "blanket claim of Constitutional privilege" is "impermissible." Est. of Fisher v. Comm 'r, 905 F.2d 645,649 (2d Cir. 1990). Accordingly, the Court will not draw adverse inferences from such blanket claims as reportedly have been or will be made here. United States v. Mount Sinai Hosp., 256 F. Supp. 3d 443, 456 n.10 (S.D.N.Y. 2017). To be sure, the Commission could seek an evidentiary hearing, call the defendants as witnesses, put particular questions to them, thus putting them to the choice of invoking the Fifth Amendment or answering, and seek an adverse inference with respect to any matters as to which they may invoke. But that is very likely to prove a waste of time, as the defendants could be put to the same choice at depositions in advance of the hearing of the motion. The Court therefore directs the Commission either to depose any of the defendants against whom it may wish to seek an adverse inference from any invocation of the privilege or proceed with the pending motion without the benefit of adverse inferences. See Fed. R. Evid. 611 (a)(2) (court empowered to exercise reasonable control over the presentation of evidence to avoid wasting time). 2. The Court declines now to determine whether an evidentiary hearing is necessary. Accordingly, the Commission's request for clarification on that point is denied without prejudice to renewal after the submission of further papers. Moreover, its request for a hybrid hearing on May 26, 2022 has been mooted by the adjournment until June 1, 2022. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 5/25/22) (yv) (Entered: 05/25/2022) |
| 05/26/2022 | 36 | JOIN LETTER MOTION to Adjourn Conference *on Order to Show Cause in light of resolution in principle* addressed to Judge Lewis A. Kaplan from Plaintiff Securities and Exchange Commission dated May 26, 2022., JOINT LETTER MOTION for Extension of Time to File Response/Reply as to 33 Order on Motion to Adjourn Conference,,,,, Order on Motion for Extension of Time to File Response/Reply,,,, addressed to Judge Lewis A. Kaplan from Plaintiff Securities and Exchange Commission dated May 26, 2022. Document filed by Securities and Exchange Commission..(Greenwood, Lee) (Entered: 05/26/2022) |
| 05/26/2022 | 37 | ORDER granting 36 Letter Motion to Adjourn Conference; granting 36 Letter Motion for Extension of Time to File Response/Reply re 36 JOINT LETTER MOTION to Adjourn Conference *on Order to Show Cause in light of resolution in principle* addressed to Judge Lewis A. Kaplan from Plaintiff Securities and Exchange Commission dated May 26, 2022.JOINT LETTER MOTION for Extension of Time to File Response/Reply as to 33 Order on Motion to Adjourn Conference, Order on Motion for Extension of Time to File Response/Reply, addressed to Judge Lewis A. Kaplan from Plaintiff. Granted. The existing order remains in effect until further order of the Court.. (Signed by Judge Lewis A. Kaplan on 5/26/2022) (jca) (Entered: 05/26/2022) |
| 06/01/2022 | 38 | WAIVER OF SERVICE RETURNED EXECUTED. Brian K. Martinsen waiver sent on 5/26/2022, answer due 7/25/2022. Document filed by Securities and Exchange Commission..(Fortino, Philip) (Entered: 06/01/2022) |
| 06/01/2022 | 39 | WAIVER OF SERVICE RETURNED EXECUTED. Michael A. Castillero waiver sent on 5/26/2022, answer due 7/25/2022. Document filed by Securities and Exchange Commission..(Fortino, Philip) (Entered: 06/01/2022) |
| 06/01/2022 | 40 | WAIVER OF SERVICE RETURNED EXECUTED. Francine A. Lanaia waiver sent on 5/26/2022, answer due 7/25/2022. Document filed by Securities and Exchange Commission..(Fortino, Philip) (Entered: 06/01/2022) |

| 06/01/2022 | 41 | WAIVER OF SERVICE RETURNED EXECUTED. Eric D. Lachow waiver sent on 5/26/2022, answer due 7/25/2022. Document filed by Securities and Exchange Commission..(Fortino, Philip) (Entered: 06/01/2022) |
| 06/01/2022 | 42 | WAIVER OF SERVICE RETURNED EXECUTED. Straightpath Management, LLC waiver sent on 5/26/2022, answer due 7/25/2022. Document filed by Securities and Exchange Commission..(Fortino, Philip) (Entered: 06/01/2022) |
| 06/01/2022 | 43 | WAIVER OF SERVICE RETURNED EXECUTED. Straightpath Venture Partners, LLC waiver sent on 5/25/2022, answer due 7/25/2022. Document filed by Securities and Exchange Commission..(Fortino, Philip) (Entered: 06/01/2022) |
| 06/01/2022 | 44 | PROPOSED CONSENT ORDER. Document filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit A).(Fortino, Philip) (Entered: 06/01/2022) |
| 06/01/2022 | 45 | PROPOSED CONSENT ORDER. Document filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C).(Fortino, Philip) (Entered: 06/01/2022) |
| 06/01/2022 | 46 | ORDER. The parties have submitted proposed consent orders imposing a preliminary injunction, granting other relief, and appointing a receiver. The parties are to notify the Court promptly whether any of them intends to propose candidates for the position of receiver and, if so, shall provide the Court with appropriate information concerning the qualifications of any candidates as well as the economic terms on which any proposes to serve. If none of the parties intends to propose any candidates, the Court shall be notified no later than tomorrow. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/1/22) (yv) (Entered: 06/01/2022) |
| 06/02/2022 | 47 | PROPOSED CONSENT ORDER. Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Markley, Brian) (Entered: 06/02/2022) |
| 06/02/2022 | 48 | CONSENT ORDER PERMITTING SALE OF DEFENDANT CASTILLERO'S PROPERTY. IT IS HEREBY ORDERED THAT: 1. The Property is unfrozen and Castillero may proceed with the sale of the Property. 2. The net proceeds of the Property sale shall be placed in Mr. Castillero's Bank of America account ending in x576 and remain frozen until the Court enters the PI Order. 3. Upon entry of the PI Order and receipt by Castillero of wire/ACH instructions for the Escrow Funds from the appointed Receiver, Castillero shall contribute the net proceeds of the Property sale to the Escrow Funds. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/2/22) (yv) (Entered: 06/02/2022) |
| 06/06/2022 | 49 | MOTION for Joshua R. Lewin to Appear Pro Hac Vice *Receipt # ANYSDC - 26176874.* **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC. (Attachments: # 1 Affidavit of Joshua R. Lewin, # 2 Exhibit A - Certificate of Good Standing - Georgia, # 3 Exhibit B - Certificate of Good Standing - Florida, # 4 Text of Proposed Order Proposed Order).(Markley, Brian) Modified on 6/7/2022 (sgz). (Entered: 06/06/2022) |
| 06/06/2022 | 50 | ORDER. The Court is considering for appointment as receiver Hon. Melanie Cyganowski, former Chief Judge of the United States Bankruptcy Court for the Eastern District of New York and now a member of the firm Otterbourg P.C. A copy of her |

| 06/06/2022 | | resume is attached.Any objections to the appointment of Judge Cyganowski shall be filed on or before June 10, 2022. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/6/22) (yv) (Entered: 06/06/2022) |
|---|---|---|
| 06/06/2022 | 51 | MEMO ENDORSEMENT granting 49 MOTION for Joshua R. Lewin to Appear Pro Hac Vice. ENDORSEMENT: Granted. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/6/2022) (jca) (Entered: 06/06/2022) |
| 06/07/2022 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 49 MOTION for Joshua R. Lewin to Appear Pro Hac Vice** *Receipt # ANYSDC - 26176874.* **Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 06/07/2022) |
| 06/13/2022 | 52 | LETTER addressed to Judge Lewis A. Kaplan from Scott N. Sherman dated June 10, 2022 re: Responding to the Court's Request for the Parties' Positions on the Appointment of a Receiver. Document filed by Michael A. Castillero, Eric D. Lachow, Francine A. Lanaia, Brian K. Martinsen, Straightpath Management, LLC, Straightpath Venture Partners, LLC..(Enzer, Samson) (Entered: 06/13/2022) |
| 06/14/2022 | 53 | LETTER addressed to Judge Lewis A. Kaplan from Melanie L. Cyganowski dated 6/14/2022 re: As a follow-up to my letter of June 13, 2022, and in response to Your Honor's e-mail of June 14, 2022. Document filed by Melanie L. Cyganowski.(tg) (Entered: 06/14/2022) |
| 06/14/2022 | 54 | LETTER addressed to Judge Lewis A. Kaplan from Melanie L. Cyganowski dated 6/13/2022 re: Let me begin by expressing my gratitude to the Court and the parties for continuing to consider my candidacy to serve as the receiver in this matter. Document filed by Melanie L. Cyganowski.(tg) (Entered: 06/14/2022) |
| 06/14/2022 | 55 | STIPULATION AND CONSENT ORDER IMPOSING PRELIMINARY INJUNCTION AND OTHER RELIEF: NOW THEREFORE: IT IS HEREBY ORDERED that, pending final disposition of this action, Defendants are restrained and enjoined from violating Securities Act Section 17(a) [15 U.S.C. § 77q(a)], in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: IT IS FURTHER ORDERED that, Melanie L. Cyganowski, until further Order of this Court, be and hereby is appointed to act as Receiver (the "Receiver") for the SP Fund Manager, the SP Adviser, the SP Funds, and the Escrow Funds, as defined in Section VIII below (collectively, the "Receivership Estate"), subject to all of the terms and conditions set forth in the Consent Order Appointing Receiver entered herewith ("Receiver Order"). IT IS FURTHER ORDERED that Martinsen, Castillero, and Lanaia shall pay $15,000,000, plus the remainder of the unused retainer funds that Martinsen provided to Nardella & Co. on or about May 9, 2022, which is at least $150,000 (collectively, the "Escrow Funds"), into a segregated interest-bearing account established by and under the control of the Receiver. Martinsen, Castillero, and Lanaia shall pay the Escrow Funds within five business days of the Receiver's appointment or the unfreezing of the personal financial accounts (bank and brokerage) identified in Exhibit C to the Receiver Order (whichever is later), except that up to $2,100,000 may be paid later, as set forth in Section IX below. The Escrow Funds shall be subject to all of the terms and conditions set forth in the Receiver Order. The Receiver may direct up to $1,150,000 of the Escrow Funds to a segregated operating account to be used for fees and expenses associated with the operation of the receivership (such as, for example, fees to compensate the Receiver and persons and entities retained to assist the |

| | | |
|---|---|---|
| | | Receiver), subject to the terms of the Receiver Order; the other Escrow Funds shall not be available to fund operating expenses. IT IS FURTHER ORDERED that the TRO is hereby vacated and replaced with this Order and the Receiver Order. Accordingly, the personal asset freeze imposed by the TRO on Martinsen, Castillero, and Lanaia is hereby lifted, subject to the restraints on their real estate assets set forth in Section IX, above. As further set forth by this Order. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/14/2022) (tg) Transmission to Finance Unit (Cashiers) for processing. (Entered: 06/14/2022) |
| 06/14/2022 | 56 | CONSENT ORDER APPOINTING RECEIVER: ACCORDINGLY, IT IS HEREBY ORDERED THAT: I. Marshalling of Receivership Assets. This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Entities. As further set forth by this Order. II. Appointment of the Receiver. Until further Order of this Court, Melanie L. Cyganowski is hereby appointed to serve without bond as receiver (the "Receiver") for the estate of the Receivership Entities (collectively, the "Receivership Estate"). As further set forth by this Order. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/14/2022) (tg) (Entered: 06/14/2022) |
| 06/15/2022 | 57 | LETTER addressed to Judge Lewis A. Kaplan from Scott N. Sherman dated 6/13/2022 re: whether to appoint Judge Cyganowski as receiver over the Straight Path Fund Manager and Funds in this case..(rro) (Entered: 06/15/2022) |
| 06/15/2022 | 58 | MOTION to Approve Application to Approve the Retention of Otterbourg P.C. Effective as of the Appointment Date . Document filed by Receiver. (Attachments: # 1 Exhibit Application to Approve the Retention of Otterbourg P.C. Effective as of the Appointment Date, # 2 Exhibit Proposed Order, # 3 Exhibit Declaration of Erik B. Weinick in Support of the Receiver's Application for Order Approving the Retention of Otterbourg P.C. Effective as of the Appointments Date).(Cyganowski, Melanie) (Entered: 06/15/2022) |
| 06/16/2022 | 59 | NOTICE OF APPEARANCE by Melanie L. Cyganowski on behalf of Court-Appointed Receiver..(Cyganowski, Melanie) (Entered: 06/16/2022) |
| 06/16/2022 | 60 | NOTICE OF APPEARANCE by Erik Bradley Weinick on behalf of Proposed Counsel for Melanie L. Cyganowski, as Court-Appointed Receiver..(Weinick, Erik) (Entered: 06/16/2022) |
| 06/16/2022 | 61 | LETTER addressed to Judge Lewis A. Kaplan from Brian Markley, Samson Enzer, Scott N. Sherman and Josh Lewin dated 6/16/2022 re: In response to the application (dkt. 58) filed yesterday by the Court-appointed receiver, Melanie L. Cyganowski, seeking the Court's authorization to retain her law firm as receiver's counsel in this case, we respectfully submit this letter to inform Your Honor that our clients, the individual defendants, have no objection to the application being granted at this juncture in the proceedings, without prejudice to any objections that the individual defendants may make in the future to challenge the receiver's appointment or actions. (mml) (Entered: 06/16/2022) |
| 06/21/2022 | 62 | MOTION to Approve Application to Approve the Retention of Stout Risius, Ross LLC Effective as of the Appointment Date . Document filed by Receiver. (Attachments: # 1 Exhibit Exhibit A Proposed Order, # 2 Exhibit Exhibit B Cohen Declaration, # 3 Exhibit Application of Stout Risius, Ross LLC).(Cyganowski, Melanie) (Entered: 06/21/2022) |

| 06/23/2022 | 63 | RESPONSE in Support of Motion re: 58 MOTION to Approve Application to Approve the Retention of Otterbourg P.C. Effective as of the Appointment Date . / *Supplemental Disclosure of Otterbourg P.C. in Support of Receiver's Application to Retain Otterbourg P.C. Effective As Of The Appointment Date*. Document filed by Proposed Counsel for Melanie L. Cyganowski, as Court-Appointed Receiver..(Weinick, Erik) (Entered: 06/23/2022) |